*ALLEN, P.
The defendant in error sued out on the 16th day of September 1854, a summons in debt against Thomas G-. James, and on the same day issued an attachment against his estate, under the Code, ch. 151, § 1. The attachment recites, that “whereas since the institution of a suit, ’ ’ &c. 1 ‘ there has been filed in the clerk’s office of the said court an affidavit.” It is assigned as error, that this garnishee process appearing thus on its face to have been issued since the institution of the suit, was irregularly issued, and that it was the duty of the court before which it came ex officio to quash it.
The section of the Code referred to, was intended as a substitute for the foreign attachment authorized by the 1 Rev. Code, p. 474, ch. 123, $ 1, against absent debtors having effects or lands within the state; and it provides, that ‘ ‘when any suit is instituted for any debt or for damages for breach of any contract on affidavit stating the amount and justice of the claim,” &c. “the plaintiff may forthwith sue out of the clerk’s office an attachment against the estate of the non-resident defendant for the amount so stated.”
The second section of the act provides *745 for a distinct class of cases, and was intended as a substitution for bail for the defendant's appearance; and authorizes an attachment where the defendant is removing' or intends to remove his estate, or any specific property sued for, on affidavit “at the time of, or after” the institution of the suit. Although the attachment in this case was issued tinder the first section of the act, the second section is referred to, and relied on for the purpose of showing that as the legislature expressly authorized an attachment after the institution of a suit in the second section, for the reasons there set forth, similar phraseology would have been used in the first section, if it had been the intention to authorize the attachment to issue *after the institution of the suit, upon the affidavit of non-residence alone.
The intention of the legislature will be best ascertained by a reference to the provisions of the former law, for which the first and second sections of the Code before referred to, were intended to be substituted.
The first section, as has been remarked, comes in place of the act in 1 Rev. Code, p. 474, ch. 123, | 1, regulating proceedings against absent debtors.
The Code, p. 643, ch. 170, | 5, provided that process to commence a suit should be a writ commanding the officer to summon the defendant. By ch. 188, 4 12, p. 716, the writ of capias ad satisfaciendum was prohibited, except in cases provided for in the preceding section; and as a substitution for the right to demand bail authorized by 1 Rev. Code, ch. 128, 4 43, 44, 50, the Code, by the second section referred to, authorized the attachment there provided for.
Under the old law bail could be required under $ 43, 44, by endorsement on the writ at the institution of the suit; and by 4 50, where bail had not been originally required, the court at any time before final judgment, for good cause shown, could rule the defendant to give special bail.
It is thus apparent that the intention of the legislature was to make the new remedies commensurate with those for which they were substituted. That as by the former law provision was made for bail at any time before final judgment, whenever the exigency of the case rendered it necessary; so by the new rule, if after the suit was instituted, the contingency arose which rendered an attachment essential to the efficacy of any judgment in the case, the party was authorized on proper affidavit to sue it out. This provision in the second section related to matter generally arising after the institution of the suit, and was not intended *to control the construction or limit the operation of the provision contained in the first section in relation to the fact of non-residence; which was the condition of things when the suit was instituted or before abatement by the return of non-residence. In the construction of the act in the Revised Code concerning absent debtors, it was held in Brien v. Pitman, 12 Leigh 379, that the admission of non-residence in an answer rendered the affidavit required by the law unnecessary; and in Moore, &c. v. Holt, 10 Gratt. 284, that it was not necessary that such affidavit of non-residence should be filed before process issued to constitute it, with the endorsement in the nature of an attachment, a lien when served. Under the present law, where the fact of non-residence exists, and the proceeding at law is substituted for the foreign attachment in equity, there can be no reason for a more narrow construction. No purpose of justice is subserved by requiring the affidavit to precede or be simultaneous with the summons. The objection of delay is obvia!ed by the fact that the suit will be abated by the return of non-residence on the summons, unless the garnishee process is sued out before the return day. Nor do I conceive there is any thing in the words of the act imperatively requiring the restricted construction contended for. The word when does not necessarily refer to the instant of time spoken of: it frequently is used in a relative, instead of an absolute sense, referring not to the present, but to a different time; and means, according to the context, “whenever,” “upon which.” “in case,” “if,” &c.
Thus we have been referred to numerous instances in this Code, -where it is used in the latter sense — “if,” “in case,” &c.
Code, p. 75, 4 14, ‘ ‘When a vacancy occurs, it shall be filled,” &c. Of course, when does not here mean at 60 *the same instant of time, but after-wards. It is used in the sense of “if.”
Ibid. 109, 4 8, it is used in the sense of ‘ ‘in case. ”
Ibid. 182, 4 24, in the sense of “if.”
Ibid. 182, 4 26, “in case.”
Many other instances were cited in argument, showing, as was remarked, that the use of this word in this relative or qualifying sense, seems to have been almost idiomatic with those charged with the preparation of the Code.
In p. 493, 4 32, we have a phrase almost identical with the one under consideration: “When any such suit is instituted, the court shall cause publication to be made,” &c. Of course it does not mean that publication shall be made at the instant of the institution of the suit.
I think the term was used in a similar sensé 4n the section under consideration, and that in case the proper affidavit is made at any time before the abatement of the suit by the return of the officer, the provision of the law will be satisfied.
It is insisted in the second place, that the attachment was defective in not designating any person in whose hands money or effects of the absent debtor might be found. The provision in the Code, p. 602, 4 7, that it shall be sufficiently levied in every case, by a service of a copy of such - attachment *746 on such persons as may be designated by the plaintiff in writing, or be known to the officer to be in possession of effects of or to be indebted to the defendant; andas to real estate, by such estate being mentioned and described by endorsement in such attachment, relates not to the form of the attachment and what it should set forth, but is merely directory to the officer as to the mode of service. He is to serve it on the persons designated by the plaintiff in writing, or known to the officer, *and as to real estate, by mentioning and describing it by endorsement on the attachment, without regard to the manner in which he acquired his information. The attachment is sufficient when it appears upon its face that a suit has been instituted and an affidavit filed in due time, conforming to the first section.
It is further objected, that the return is defective in failing to summon the garnishee to appear at any particular day or term, as provided for by the Code, p. 603, l 9; and that furthermore, instead of serving it on each of the garnishees personally, the return is that he executed it on Pulliam & Davis on the 16th of September 1854, by delivering to D. M. Pulliam, one of the firm of Pulliam & Davis, a true copy of the writ, and explained its purport to him.
These objections relate to the regularity of the service of the process, and not to the legality- and validity of the process itself. In the case of Mantz v. Hendley, 2 Hen. & Munf. 309, where it was held the court ought to quash the attachment ex officio, it appeared by the warrant itself that it had been granted upon an affidavit setting out as the law then was. no sufficient reason for an attachment. The defect was intrinsic in the warrant; being radically defective in point of law as showing no reason for the attachment, the court could give no judgment on it, notwithstanding the objection had not been taken at the first appearance, but the party had pleaded to issue. The principle is similar to the rule acted upon in Ross v. Milne & wife, 12 Leigh 204, where it was held, that upon a declaration' which showed that the plaintiff had no right of action, andón the contrary, that the right of action was in another, a verdict being found for the plaintiff, the statute of jeofails did not apply, and the defect was not cured.
In this case, both parties upon whom the attachment was returned executed, appeared and made no ^'objection to the mode in which the process was " executed or returned. If made at a proper time, the objection might have been obviated by an amended return. The object of the process was to give notice and to restrain the garnishees after such notice, from parting with the attached effects. If they had appeared and moved to quash because the process had been irregularly executed or returned, such an appearance would not have been an appearance to the action. Wynn v. Wyatt’s adm’x, 11 Heigh 584. But in this case they made no such motion. By appearing to the action and going to trial on the merits, they dispensed with a more formal service or return, waived any objection to the alleged irregularity, and cannot now raise the objection for the first time in the appellate court. Cunningham v. Mitchell, 4 Rand. 189; Poling v. Johnson, 2 Rob. R. 255.
On the merits the question would seem to be free from doubt. Although it was proved that the absent debtor had made a special deposit of the money with Davis in his individual character and not as a member of the firm of Pulliam & Davis, that Davis had been in the habit of keeping an account with the absent debtor, had acted as his agent in buying slaves, and had accepted and paid drafts drawn by the absent debtor on him out of funds so deposited, and that he handed over the funds of the absent debtor to the clerk and book-keeper of the firm to be converted into current funds as opportunity offered, and did not give any direction for raising an account therefor between the absent debtor and the firm; it was further proved that the funds so handed over to said clerk and book-keeper, were afterwards and before the service of the attachment credited to the absent debtor on the books of the firm, and the money was passed off by the clerk in the way of business, after being so credited. It further appears from the account filed between the ^absent debtor and the firm, that the former is charged and the latter credited with two sums paid out of the money so deposited before the date of the attachment; and it was proved that the money for which the firm has been rendered liable was paid out to the absent debtor or upon his order, by checks on the bank drawn by the firm by order of said Davis; and that the same was so paid out after service of said attachment on Pulliam, and personal notice to said Davis that an attachment had been served on Pulliam to attach the effects of the absent debtor in the hands of said firm.
Prom the facts in evidence it is clear that the money had ceased to be a special deposit of specific funds in the hands of Davis. It had been credited on the books of the firm, and used by the firm in the way of business. The specific funds could no longer be followed, and the absent debtor had a right to recover from the firm the funds so used for the benefit of the firm, regarding the firm as his debtor. The firm so treated the matter both before and after the service of the attachment. The absent debtor was credited with the money in account with the firm, and debited with money paid for him by the firm. Being thus the debtors of the non-resident when the attachment was served and notice given as aforesaid, and having waived all objection to the regularity of the service by appearing to the action, any payments made to the absent debtor after what they conceded was sufficient service and notice, were improperly made, and the firm was properly held responsible for *747 1he amount so paid to the attaching1 creditor to the extent of his claim.
I think the judgment should be affirmed.
The other judges concurred in the opinion of Allen, P.
Judgment affirmed.

The principal case is cited in Claffin v. Steenbock, 18 Gratt. 819, 866, and note: also, in Goodwyn v. Myers. 16 Gratt. 852. See monographic note on “Attach-m ants" appended to Lancaster v. Wilson. 27 Gratt. 624.