Allen P.
The plaintiffs in error brought ejectment to recover a lot of land in this city, claiming to be the owners in fee. It does not appear by tlie printed record that they filed with the declaration a statement of the profits and other damages they meant to elaim; or that the defendant bad filed with his plea, or at subsequent time before the trial, with the leave of the court, a statement of his claim for improvements. It is said in argument that such statements on either side were filed within two. *345 or three days before a jury was sworn to try the issue, and that this is shown by some memorandum endorsed on or filed with the original papers. On the 24th of November 1856, the jury sworn to try the issue returned a verdict that the plaintiffs had a right to the posession, and that their estate was in fee simple; and they allowed the defendant for his improvements, over and above the damages to which the plaintiffs were entitled, the sum of $1,250. For reasons appearing to the court judment on this verdict was suspended. On the 29th of November 1856, during the same term and before any judgment was entered, but after the jury had been discharged and had dispersed, the plaintiffs moved the court, by an entry on record, to require that the value of their estate in the premises in the declaration demanded, without the improvements, be ascertained by impannelling a jury for the pnrpose. The motion was held under advisement until the following term, when the court overruled the motion, and entered up judgment upon the verdict according to law. The plaintiffs excepted to the decision overruling their motion, and have brought the case to this court by a writ of supersedeas.
By the R. C. of 1819, ch. 118, § 1, it was provided that the demandant in a writ of right, if he recover his seisin, may also recover damages, to be assessed by the recognitors of assize, for the tenants withholding possession of the tenement demanded. By an act passed April 6th, 1838, Sess. acts p. 75 provision was made for the assessment of damages for mesne profits; the act providing that in the trial of all actions of ejectment, if the jury find a verdict in favor of the plaintiff, it shall be lawful for them to assess damages for the mesne profits, &c.; provided that such damages shall not be assessed unless the plaintiff file with his declaration a statement showing the amount of profits and other damages which he means to claim. These provisions were for the benefit of *346 ^ema;n<^ant or plaintiff, and the jury that tried the issue, also assessed the damages. The enquiry was simple and not complicated with any question as to the value of improvements, and could be made by the recognitors of the assize or the jury sworn to try the issue upon the question of possession or title in ejectment, without materially interfering with the trial of the main question in issue.
By an act concerning delinquent and forfeited lands passed March 10th, 1832, Sess. acts p. 61, § 7, provision was made that whenever any judgment or decree should be entered for the recovery of land, or the possession thereof, situated in any of the counties lying west of the Alleghany mountains, it should be lawful for the tenant to produce evidence, tending to show that he or those under whom he claimed, ha\e.I>ona fide settled and seated such lands &c., and have made valuable and permanent improvements thereon, over and above the value of the use aud occupation thereof; and if satisfied of the probable truth of such allegations, the court was impowered to suspend the execution of the judgment or decree until the same could be enquired of by a jury which should be empannelled and sworn well and truely to ascertain the reasonable additional value given to such recovered land by the permanent improvements over and above a reasonable allowance for the use and occupation of the land; the amount ascertained to constitute a lien on the land. But the act was to be contrued as not to authorize a valuation of improvements so as to reduce the value of the plaintiffs land below the actual value of the same without improvements at the time of eviction.
This law, it will be observed, looked at the assessment of the allowance to the defendant for improvements as always to be made after judgment or decree by a jury specially’ impannelled and sworn to such en *347 quiry- This was the condition of the law when the attention of the re visors was. directed to this subject. They reported two bills embracing the various provisions contained in the previous laws, with some substantial alterations, and with modifications as to the manner of carrying the law into effect.
In the Code cli. 135, § 30, is found the provision for the plaintiff. If the plaintiff file with his declaration a statement of the profits and other damages he means to demand, and the jury find in his favour, they shall at the same time, unless the court otherwise order, assess the damages for mesne profits, and also damages, for any destruction or waste of the buildings or other property. So far the law is in accordance with the previous laws. This enquiry, being for the benefit of the plaintiff alone, is to be made by the jury which tries the issue, unless the court should otherwise order. The act is silent as to the mode of assessment when the court did otherwise order, but as the law gave the plaintiff a right to such an assessment, it would be competent for the court, under its general powers to empannel juries to ascertain facts, and from analogy to other portions of the act, to direct another jury to be empannellcd to make such assessment of the damages. The 32nd section takes up the case of the defendant, and provides, that if he intends to claim allowance for improvements he shall file with his plea, or at a subsequent time before the trial, (if for good cause allowed by the court), a statement of his claim therefor, in case judgment be rendered for the plaintiff. The 33rd section declares that the damages of the plaintiff and the allowance to the defendant for improvements shall be estimated and the ballance ascertained and judgment therefor rendered as prescribed in the 136, chapter. That chapter as will be seen, as reported by the revisors, was copied in a great measure from the act of March 10th, 1832. The 34th *348 sec^on c^apter 135, provides that on motion of either party, the court may order the assessment of damages an(l allowance to be postponed until after the verdict on £jie title is recorded.
We thus perceive that when the law was so modified, as to admit the plaintiff, in addition to a claim for damages for mesne profits, to claim also damages for waste and destruction to buildings and the other property, although in general, the assessment was to be made by the jury that tried the issue, the court might order otherwise : a power the court might, and on proper suggestion, would exercise, whenever from the complexity of the questions concerning the title, justice to the parties would be promoted by confining the jury to the main issue, and that alone. But when the defendant filed a statement of his claim to allowance for improvements, the enquiry becomes still more complicated; the amount of damages for mesne profits, for destruction and waste of buildings and other property, the value of improvements, the Iona fides of the possession when they were made, their permanence, &c., were all subjects of enquiry, presenting generally questions more numerous and perplexing than those referring to the title to the premises. The court therefore on motion of either party, may order this assessment to be postponed until after verdict on the title is recorded. Until that question was settled it would be uncertain whether there would be any necessity for such assessment. If the plaintiff failed, the time spent and costs incurred, in these collateral enquiries would have been spent and incurred for no beneficial purpose; and the attention of the jury would have been diverted from the main issue, and their verdict from that cause be less satisfactory.
The allowance for improvements was fully provided for by the 136th chapter of Code, p. 613, which embodied the provisions of the act of March 10,1832, eon- *349 fined to the counties west of the Alleghany originally, but extended to the whole State by the Code. When damages were to he assessed and improvements estimated before a judgment as provided for in ch. 135, it was to bo done as prescribed by ch. 136. The proceedings under this chapter as in the act of March 10,1832, followed the judgment or decree for the recovery of the land. The defendant against whom the judgment or decree was rendered, might at any time before the execution thereof, present his petition, stating that while he, or those under whom he claimed, were holding the premises under a title believed by him or them to he good, valuable improvements were made thereon, and praying that he be allowed for the same over and above the value of the use and occupation of such land. The court if satisfied of the probable truth of the allegations may suspend the execution of the judgment, and empannell a jury to assess the damages of the plaintiff and the allowance for improvements. The second section directs that the jury, in assessing such damages under this chapter or chapter 135, shall estimate against the defendant the clear annual value of the premises, exclusive of the use by the tenant of the improvements thereon made by himself or those he claims under. The 4th section provides that if the jury shall he satisfied that the tenant, or those he claims undex*, made, on the premises, at a time when there was reason to believe the title good under which possession of the premises was held, valuable and pex-manent impx’ovements, they shall estimate in his favor the value of such improvements, &c. The 5th section contains some further directions; and the 6th px'ovides that after offsetting the damages and allowance, the jury shall find a verdict for the balance for plaintiff or defendant, as the case may he, and judgment or decree shall be entered therefor according to the verdict. And the 7th section makes the balance due to *350 tlie defendant a lien on the land until paid. The 8th , . . , and 9th sections contain provisions for the case of tenant ^01' or refer to a suit brought by a mortgagee.
This completed the scheme of the revisors as reported to the legislature in chapters 185-6. Revisors report page 697 to 700. By the scheme the jury sworn to try the issue, where statements were filed with the declaration or plea, might, unless the court ordered, or either party so moved, make all the inquiries required; or they might, if the court should so order, he made by the same jury after the verdict on the title was recorded, or, as I construe the act, by a new jury to he empannelled. And where the application was made on petition after judgment, the assessment was necessarily to be made by a new jury. But in either case the assessment of'damages and for the allowance for improvements must be made by the same jury. The enquiry is blended; the value of the premises estimated against the defendant, is to he exclusive of his use of improvements made by him; a balance is to he struck and a verdict for such balance found.
The legislature when deliberating on this subject’, could not fail to see, that however correct in principle it might be, to allow the occupying tenant for improvements made at a time he had reason to believe his title was good, and before notice of the plaintiff’s claim, yet in carrying out the principle into practice cases of great hardship to the true owner would arise, unless some further protection was provided for him. The balance found by the verdict might be more than the owner could pay down; yet a judgment passed against him for it, and it constituted a lien on his land. In the unsettled portions of the State, to which the law was at first confined, unimproved lands were of no great value; and as sympathy might be felt for the occupying claimant and prejudice entertained against a non-resident proprietor, there *351 was some risk that cases might arise, in which by the find- ° J J ing of the jury, the owner of the fee would he improved out of his estate; a lien fixed on it for more than it was worth. To guard against such contingencies, the legislature engrafted upon the bills reported by the revisors, the sections under which this controversy has arisen. The 10th section enacts that “when the defendant shall claim allowance for improvements as before provided, the plaintiff may, by an entry on record, require that the value of his estate in the premises, without the improvements, shall be ascertained. By the 11th section, the value of the premises shall be estimated as it would have been at the time of the enquiry, if no such improvements had been made on the premises by the tenant or any person under whom he claims, and shall he ascertained in the manner, therein before provided, for estimating the value of improvements; and by the 12th section, the plaintiff in such cases, if judgment is rendered for him, may at any time during the same term, or before judgment or decree is rendered on the assessment of the value of the improvements, enter on the record, his election, to relinquish his estate in the premises to the defendant, 'at the value so ascertained, &c. The remaining sections of the chapter provide for that contingency. The word “when” used in the beginning of the 10th section, “when the defendant shall claim,” was not intended to prescribe the period at which the plaintiff by entry on record, was to require that the value of his estate in the premiises should be ascertained. The acts could not be contemporaneous. And when a petition was filed, as provided for in the 136th chapter, § l,the plaintiff might not have any notice of it; the petition could be filed at any time before the execution of the judgment or decree. “When,” in this, as in other instances in the Code, is used in the sense of “if,” “in case.” The frequent use of this word in its relative sense was the subject of com *352 ment in Pulliam v. Aler, 15 Gratt. 54. The value o£ his estate is to be ascertained in the manner therein before provided for estimating the value of the improve-' ments; that is by a jury; that being the way or method provided for making all the assessments and estimates referred to in the two chapters. But there is nothing to show that the value was to be ascertained by the same jury. I incline to think it was not so intended, or else it would have been expressed. This provision, as has been shown, was a new one, forming no part of the scheme reported by the revisors, and not found in the former acts of assembly; and there was good reason why it should not be blended with the other enquiries. This enquiry was of a different character, and the necessity for it would depend on the result of the previous investigation. Until it was ascertained, that there would be a balance in favor of the defendant for improvements, it would be unnecessary to enter into the enquiry as to the value of the land. The jury if confined to the assessment of damages for mesne profits and waste, and to the allowance for improvements, had many perplexing points to settle; such as the honafides of the tenant in making the improvements, the nature of the improvements whether permanent or temporary, the amount of rents or profits, the damages for waste and destruction. What reason of convenience would there be in perplexing the jury with testimony touching a matter foreign to all the other questions ? A matter which if the jury made no allowance for the improvements, they would not be required to consider. It is for the plaintiff to determine whether he will require the valuation, in order to a relinquishment of his estate ; and justice would seem to demand that he should know whether any charge would be fixed on his estate, and the amount of it, before incurring the trouble and expense of proving the value of his interest, and con *353 suming the time of the court and jury in what might turn out to be a fruitless enquiry. Such enquiry too if made necessarily before the same jury, might tend to his prejudice upon the other subjects to be investigated. It might be inferred, that he was conscious the improvements were made, when the defendant or those under whom he claims, believed they held under a good title, notwithstanding any efforts of the plaintiff to make the contrary appear. Or it might be ascribed to a more intimate knowledge of the value of the improvements; or the conviction that his claim to damages for waste and destruction was unfounded. Considerations of this kind may exercise an influence over the minds of jurors to an •extent of which they themselves are unconscious, and •give a coloring to the evidence which, but for such impressions, it would not bear. The plaintiff must enter on the record his election to relinquish his estate, during the same term, if judgment is entered for him, or before judgment is rendered on the assessment of the value of the improvements.
The act I think contemplated all the enquiries, as well those relating to damages and allowance for improvements, as those to ascertain the value of the plaintiffs estate in the land, if no sueh improvement had been made, to be directed to the same period of time. The value of the plaintiffs estate shall be estimated as it would have been at the time of the enquiry is the language of the act; which I think relates to the enquiry into all the subjects contemplated by the act, as well as this particular one to ascertain the value of the land. All must be made during the same term, unless in some rare case, owing to a disagreement of the jury or some unforeseen contingency, as in the present case, where the court held the case over for advisement, the enquiry may be postponed; but in such case it would be attended with no difficulty-in ascertaining the value as it was at the time when the *354 was The spirit of the act would be carried out; and as it is remedial, giving a remedy for what would otherwise be a crying enormity, the disherison of men, by compelling them to .pay for improvements they did not make, and perhaps would not have desired, it should receive a fair construction so as to effectuate the intention of the legislature, and do justice to both parties. I think'the motion was in time and that the court should have sustained it, and erred in overruling it; and therefore that the judgment should be reversed and the cause remanded; and unless the plaintiffs, when the caséis again docketed, shall waive their right, that a jury should be empannelled and sworn to ascertain, what was the value of the estate of the plaintiffs in the declaration demanded, without the improvements, as of the 24th day of November, 1856, the time when the former verdict was found; and upon the coming in of such verdict, if the plaintiffs in person or by their attorney in the cause, enter on the record, their election to relinquish their estate in the premises to the defendant, at the value so ascertained, the court to make all proper entries and render judgment according. to law. But if tlie plaintiffs shall waive their right to require that the value of their estate in the premises, without the improvements, shall be ascertained, the court is to proceed and enter judgment on the verdict so found on the 24th day of November, 1856. Which is ordered to be certified.
The other judges concurred in the opinion of Allen P.
Judgment reversed.