MONCURE, P.
I think that the Hustings Court did not err in overruling the objection of the plaintiffs to the jurisdiction of the said court at a monthly term thereof, to hear and decide the motion of the defendants to abate the '^attachment, on the ground that the same was issued upon false suggestions, and without sufficient caüse; as mentioned in the first bill of exceptions. A county or corporation court is but one court, though it has both monthly and quarterly terms. The Code, ch. 157, § 16, prescribes the general jurisdiction of such court, declaring, among other things, that it shall have jurisdiction to hear and determine all motions, and other matters made cognizable therein by any statute. Id., l17, declares that certain enumerated subjects, including “such motions as are provided for by the fifth section of chapter 167, and actions at law,' shall ,be cognizable onlj1- at a quarterly term .thereof;” and that “all other matters or things authorized by law to be done by or in such court, may be done either at a monthly or quarterly term.” The motion in this case is one of the subjects expressly .embraced in $ 16, prescribing the general jurisdiction of the court; and is not one of the subjects exclusively assigned to the cognizance of a quarterly term thereof, by % 17. It is, therefore, one of the “other matters or things” which the concluding sentence of that section declares “may be done either at a monthly or quarterly term. ’ ’ But it is argued that as the attachment in this case was issued under the second section of chapter 151 of the Code, in a suit pending in the Hustings Court, of which suit a quarterly term of that court has exclusive cognizance under the Code, ch. 157, § 17, as aforesaid, the attachment is an incident to the suit and inseparable therefrom, and like the suit, is exclusively cognizable at a quarterly term; and therefore, that 'the motion to abate the attachment could not be entertained at a monthly term. But I do not think there is any such necessary or inseparable connection between the attachment and the suit. And I think very great inconvenience and injury might arise from the want of jurisdiction by a monthly term of such a motion, while none whatever *can arise from the existence of such jurisdiction. I am also clearly of opinion that the Regislature intended to give jurisdiction to a monthly, as well as a quarterly term of a county or corporation court in such a case, and that this intention plainly appears throughout the attachment law as contained in the Code, ch. 151. The act of March 19, 1867, Sess. Acts p. 796, cannot affect the case, as the second section of that act provides that until the Criminal Court of the city of Richmond is organized as provided for by the act, the jurisdiction of the Hustings. Court of said city shall remain as it now is; and it appears that such criminal court has not yet been organized.
I am further of opinion that the Hustings Court did not err in hearing and deciding the said motion without the intervention of a jury; as mentioned in the second bill of exceptions. “On a motion, when an issue of fact is joined and either party desire it, or when, in the opinion of the court, it is proper, . a jury shall be impanelled, unless the case be one in which the recovery is limited to an amount not greater than twenty dollars, exclusive of interest..” Code, ch. 167, § 8, p. 704. In this case the plaintiffs and the defendants were requested by the court to state whether they desired a jury to be impanelled to ascertain the *841 issue of fact arising- under the motion. The plaintiffs declined to express any desire upon the subject, and the defendants stated that they did not wish a jury im-panelled, but desired that the matter should be heard by the court without the intervention of a jury; which was accordingly done, the court being of opinion that it was not proper, under the circumstances, to have a jury.
But I am of opinion that the Hustings Court erred in deciding that the attachment was issued upon false suggestions and without sufficient cause, and in rendering judgment that the said attachment be abated as mentioned in the third bill of exceptions.
*The plaintiffs labor under a great disadvantage in this case, in consequence of the manner in which it comes up for revision before this court; that is, upon a certificate of the evidence on which it was heard and decided by the court below. In such a case the appellate court must regard the case as upon a demurrer to evidence, considering the appellant as the demurrant. In this case, there is a great mass of evidence, and a great deal of it is apparently conflicting. But, in my view of the case, there is an ample sufficiency of uncontradicted evidence to entitle the plaintiffs to a judgment in their favor on the defendants’ motion to abate the attachment. I think the question raised by the motion is, whether the plaintiffs, when they sued out the attachment, believed the matters stated in their affidavit as the foundation thereof, to be true, and had sufficient cause for so believing; not whether those matters were in fact true. If they believed them to be true, and had sufficient cause for so believing,,the attachment was then rightfully issued, the conditions on which the remedy was granted having been fully complied with. They cannot be deprived of the benefit of the remedy by its being shown that the matters which they thus believed, and had sufficient cause for believing, to be true, were not in fact true. This, I think, is the necessary construction of the Code, ch. 151, § 22, which gives the defence. “The right to sue out any such attachment may be contested,” is the language with which that section is commenced. This means that it may be contested whether the attachment was rightfully sued out. And this becomes more plain as the section proceeds: “And when the court is of opinion that it was issued on false suggestions, or without sufficient cause, judgment shall be entered that the attachment be abated.” Can it be said that the attachment was issued on false suggestions, when the affidavit on which it was issued states that the affiant believed the matters ^therein stated to be true, and when he had sufficient cause for so believing? My con- j struction is further confirmed by the act of 1840-41, p. 77, ch. 67, $ 1, which was the source, or one of the sources, from which the provision in the Code, ch. 151, § 22, was ; i derived. That act was passed in consequence of the decision of this court in Redford v. Winston, 3 Rand. 148, in which it was held, that where an attachment is issued against the estate of a tenant for rent to become due at a future day, on the oath of the landlord that he has sufficient grounds to suspect that his tenant will remove his effects, &c., it is not competent for the tenant, on the return of the attachment, to plead that his landlord had not sufficient grounds to suspect that the tenant was about to remove, &c. The act provided that in all cages of attachment for rent it should be lawful for the tenant to “contest the right of the landlord to sue out his attachment ; and if it shall be made to appear that the landlord or lessor had not just cause to suspect.that the tenant would move his effects from the leased tenement before the rent was to become due, or that for any other cause an attachment should not have issued, judgment shall be entered for the tenant that the attached effects be restored to him with costs.” Under that act there could have been no doubt but that it was incumbent on the tenant, in order to sustain the defence which it gave, to show, not that he did not intend to move his effects from the leased tenement, but that the landlord had not just cause to suspect such intention. The Code, ch. 151, $ 30, further confirms the same construction; but I will not quote it here. The sedond section of chapter 151 of the Code was intended to afford a substitute for the right which formerly existed to demand bail, which right was abolished by the Code of 1849. That section was not in the original report of the revisors. See their report, 753. When they framed that part of their report, *they had not thought of ; recommending the abolition of imprisonment for debt,' and consequently the right to demand bail in civil actions. Af-terwards, in the progress of their work, they determined to make such a recommendation, as may be seen by reference to their report, p. 840; and as one of the consequences of the proposed change, they recommended an amendment of ch. 151, by inserting therein what is now i 2 of that chapter of the Code. That that section was intended as a substitution for bail for the defendant’s appearance, is also shown by what is said by this court in Pulliam, &c., v. Aler, 15 Gratt. 54. Now, in regard to bail, we know that, in a large class of actions it was demandable of right, and no terms were laid upon the plaintiff in demanding it. He gave no security, and was personally answerable for damages only in an action for maliciously demanding it, without sufficient cause. And in all other personal actions it was demandable by an order of a judge or justice, “upon proper affidavit, verifying the justice of i the plaintiff’s action, and showing probable cause to apprehend that the defendant will depart from the jurisdiction of the court, so that process of execution cannot be | served upon him.” 1 R. C. 1819, p. 499, § *842 44. There can be no doubt as to the true construction of that section. The same may be said of the bail law of 1852, adopted after the Code of 1849 took effect, and embodied in the Code of 1860, forming' H 33-38 of ch. 151, pp. 652-3. By section 33 the affidavit is required to show, “that there is probable cause for believing that the defendant is about to quit this State,” &c. ; and by section 36, the court in which the case is pending is authorized, after reasonable notice, to discharge the defendant from custody, &c., on being satisfied, not that the defendant was not about to quit the State, but ‘ ‘that there was not probable cause for so believing.” Now there can not be any doubt about the meaning of this section, and *it is not only in pari materia with the one we are now construing, but is a section of the same chapter of the Code with that. What is indifferently called “reasonable cause,” “just cause” and “sufficient cause” in these statutes in pari materia, mean the same thing; and what that meaning is is fully explained by Judge Daniel in the case of Spangler v. Davy, 15 Graft. 381, in which it was held, that justifiable probable ca.use for suing out an attachment against the effects of a debtor is, a belief of the attaching creditor in the existence of the facts essential to the prosecution of the attachment, founded upon such circumstances as, supposing him to be a man of ordinary caution, prudence and judgment, were sufficient to produce such belief. It is not, therefore, a rash belief, formed without due caution, which will be sufficient in such cases; but the belief must be formed on reasonable grounds, after proper enquiry. If the plaintiff use all proper means to ascertain the fact, and after doing so act upon his bona fide belief, founded on reasonable grounds, in suing out the attachment, it cannot be abated on the ground that it was issued on false suggestions, or without sufficient cause, even though it may turn out that he was in fact mistaken. If this be not so, the remedy by attachment is no substitute for the old remedy given by the bail law, and is productive of little or no good, but rather of evil. Its chief effect will be to involve men in trouble, litigation and even ruin.
If these be sound principles, and I think they are, their application to this case must result in the reversal of the judgment. I do not wish to make further comments on the evidence in this case than the decision of it absolutely requires; because, unfortunately, the litigation between these parties will not be ended by this decision. The action at law is yet to be tried, and other actions may possibly grow out of its decision ; none of which actions do I wish, in the least degree, to affect or prejudice. In my ‘own mind, I have no doubt but that the uncontradicted evidence in the case shows that the attachment was not issued on false suggestions, or without sufficient cause, within the true intent and meaning of the Code, ch. 151, § 22; and a sufficient reason may perhaps be assigned for this opinion by briefly referring to a few prominent facts of the case. When the attachment was sued out the defendants were indebted to the plaintiffs in upwards of $48,000; most of the amount being not then due and payable. About $40,000 of the amount [I speak in round numbers, which are sufficiently near the truth for the purposes of the case] were for goods purchased on or about the 4th and 8th days of March, 1867. The amount of these purchases was so great — exceeding by three or four times the amount which had ever before been purchased by and of the same parties in the same time — that the suspicion of the plaintiffs was excited, and one of them (Mr. Bancroft) determined not to deliver the goods without being first satisfied by the defendants that it could be safely done. Accordingly, Mr. Nicholas Steen-bock was sent for by Mr. Bancroft, and they had an interview on the subject, in which the fullest assurances were given by Mr. Steenbock of the solvency of his firm; of the success of their business; that the goods were wanted for the purpose of being sold in their legitimate Richmond trade;- and that the amount would be duly paid at maturity. So well satisfied was. Mr. Bancroft with these assurances, that on the faith of them he delivered the goods; taking defendants’ notes on time, without security. There is no dispute about this evidence of Bancroft. He fortifies it by figures made at the time, in the presence of N. Steenbock, who tacitlj’' admits the truth of it by not denying it, nor even giving any testimony in the case. Julius Steenbock seems also, in effect, to admit the correctness of the evidence of Bancroft as to the communication made to *him by N. Steenbock. Shortly after this heavy sale — less than a month— the plaintiffs hear that the defendants are selling goods at auction in Richmond, and send an agent (Davis) forthwith to this city to 'look after the debt. It turns out that, in the short interval between the time of the sale by the plaintiffs to the defendants early in March, and the visit of Davis to Richmond early in April, 1867, goods to the amount of $48,000 and more had been at different times shipped by the defendants to New Orleans, and to the amount of thirty odd thousand dollars had been at different times shipped by them to Baltimore ; and all of them sold out in those cities at public auction for cash; of course at a leavy loss. And in these shipments all, or nearly all, of the goods bought by the defendants of the plaintiffs for the legitimate Richmond trade were embraced, having been forwarded from Richmond shortly after their arrival from New York • — in many instances in the original packages' — so that, when search was made for the plaintiffs’ goods in the store of the defendants after the levy of the attachment, not one article of them could be found. When, under these extraordinary circumstances, Davis, the agent of the plaintiffs, *843 called on Julius Steenbock for an explanation, he refused to give any! Can it be said that the attachment sued out by the plaintiffs, under these circumstances, was sued out on false suggestions or without sufficient cause? It matters not how the fact was in regard to John Levy and M. M. Levy, the father-in-law and brother-in-law of Julius Steenbock, and the alleged purchasers of the goods shipped to New Orleans. That fact, if true, was unknown to the plaintiffs, and the defendants refused to give them or their agent any explanation. Julius Steenbock says that Davis showed him no letter, of credit from his principals, or the explanation would have been given. But he ought not to have waited for a demand of such an explanation. He knew the goods had been ’'reluctantly delivered by the plaintiffs, and only on the faith that they were to be sold in the legitimate Richmond trade, and he ought not to have changed them from that destination without letting the plaintiffs know why it was done. But surely it cannot be necessary to say anything more, and I wish, for reasons before stated, to say nothing which is not necessary for the purposes of this case.
I am, therefore, for reversing the judgment.