JOYNES, J.
I do not concur in the views which have been expressed by my brother Moncure, in reference to the construction of the twenty-second section of the chapter on Attachments in the Code. As the question is an important one, and of the first impression in this court, I propose' to state briefly my own views in respect to it.
The general policy of the attachment laws is to furnish a stringent remedy against the defendant, under certain circumstances which make such a remedy necessary to secure the rights of the plaintiff. Thus, by the first section, the remedy is given where the defendant is not a resident of this State, but has effects or debts due him within the State; by the second section, it is given where the defendant is removing or intends to remove specific property sued for, or his own estate, or the proceeds of the sale of his property, or a material part of such estate or proceeds, out of this State, so that process of execution in the suit will be unavailing; by the third section, it is given, whether the claim be payable or not, where the debtor intends to remove, or is removing, or has removed, his effects out of the State, so that there will probably not be therein sufficient effects of the debtor to satisfy the claim when judgment is obtained therefor, should only the ordinary process of law be used to obtain such judgment ; and by the fourth section, it is given to a landlord for the recovery of rent, where the tenant intends to remove, or *is removing, or has within thirty days removed, his effects from the leased premises, and where there will not probably be left on the premises property liable to distress sufficient to satisfy the rent when it becomes payable. It is only the necessity of doing justice to the plaintiff, under such circumstances, that authorizes a departure from the general policy of the law, which secures to the debtor the control of his property until judgment has been obtained in the due course of proceeding, and from the general principle, dictated by natural justice and sanctioned by universal law, "that a party shall have notice of all legal proceedings which are to bind either his property or his person.
This extraordinary remed3r is not only harsh towards the defendant himself, but its operation is harsh towards the other creditors of the defendant, over whom the attachment creditor obtains priority. It is susceptible of great abuse, and has often been greatly abused. It is, therefore, closely watched, and will never be sustained unless all the requirements of the law have been complied with. From the necessity of the case, the law accepts an affidavit ex parte as sufficient prima facie evidence of the justice of the claim, and of the existence of the facts alleged as authorizing* the attachment, to justify the issuing of the process in the first instance. If a party sues out such a process recklessly and without having sufficient grounds to justify him in believing that the facts exist upon which it is based, the defendant can obtain redress by an action for damages. But in this action the plaintiff cannot recover, if it appears that the defendant in suing out the attachment acted bona fide, and upon such apparent grounds as justified him in believing that the facts really existed. The case will not be altered though it is made to appear, upon a full development of all the facts, in the trial of the action, that the appearances on which the defendant acted *were altogether delusive, and the inferences which he drew from them without any foundation in fact. Spangler v. Davy, 15 Gratt. 381.
But the Legislature considered that this remedy did not afford an adequate protection against the abuse of this process, and by the twenty-second section provided another. That section provides that ‘1 the right to sue out any attachment may be contested ; and when the court is of opinion that it was issued on false suggestions or without sufficient cause, judgment shall be entered that the attachment be abated.” The remedy thus provided is altogether different from the remedy by action. The object of the latter is to obtain indemnity from the party, and to inflict punishment upon him for wrongfully and maliciously abusing the process,, whereby the plaintiff in the action has been injured and oppressed. The object of the motion is to arrest the mischief by abating the attachment. The question to be tried is the “right to sue out” the attachment; in other words, "whether it was issued “on false suggestions or without sufficient cause. ” In the present case, the ground alleged for the attachment is that the defendants are removing their effects. The plaintiffs in *844 sist, that though the defendants may not have been, at the time of suing out the attachment, in the very act of removing their effects, they were engaged in a course of removing them from time to time. If that was so, then a state of facts'existed in which the law gives the remedy by attachment. In the view which I take of the law, the question on the trial of the motion was, whether, upon all the evidence, there was reasonable ground or “probable cause” to believe that the defendant was so removing his effects, and not whether the facts as they appeared to the affiant, though only a small part, perhaps, of the facts of the case, afforded him reasonable ground for such a belief. The decision must be according to the real truth of the *case as ascertained from a full in-' vestigation of all the facts, and not according to .the apparent or probable truth as it seemed to the affiant upon such of the facts as were known to him. I say nothing of the burden of proof, or as to what is to be done on such a motion if no evidence .is offered, or if the -existence of any probable cause is left in doubt. No sucti question has been raised in this case, the defendants in the motion having first introduced their evidence to show the existence of probable cause, and thus assumed the burden of proof. In an action for malicious prosecution, or for maliciously suing out an attachment, the .burden of proof is in the plaintiff to show the want’of probable cause, though it involves the proof of a negative. 1 Greenleaf Ev. § 78. O’Grady v. Julian, 34 Alab. R. 88.
If, on the trial of such a motion, it ap-. pears that there were facts which, at the time the attachment was sued out, afforded reasonable ground to believe that the defendant was engaged in a course of removing his effects, which he had not completed but designed to continue, it is competent for the defendant'to show that the inference drawn from these facts was unfounded, and that the real .truth of the case was otherwise. Thus, if a merchant in Richmond, who has recently come from another State, is found to be packing up his goods and sending them to the wharf, having disposed of the house in which he had been doing business, especially if' the goods are removed at night, there would be reasonable ground to believe that he was removing, or intended to remove, ' his effects out of the State. It would be competent for him to show that, in point of fact, he was only removing his goods to Petersburg, where he had rented or purchased a store, and intended to prosecute his business. Upon that state of proof, it would appear that the.affiant, upon the partial state of facts known to him, had reasonable ground for *suing out the attachment, but that, upon the whole case, there was no ground for the attachment. In such a case, it seems to me, the attachment should be abated. But when the existence of “probable cause,” in the first instance, is thus made out, and the defendant undertakes to repel it by proof that the real truth, is otherwise, he must do so by clear evidence. Unless he can place the fact beyond doubt, the attachment must stand, for then the defendant has failed to overthrow the “probable cause” raised by the evidence.
It remains to enquire, whether this is the true construction of the statute?
The attachment provided for by the first section is given upon affidavit, among other things, that the defendant is not a resident of the State. Upon a motion to abate such an attachment, the enquiry must be, whether or not this averment is true. It is. a matter of fact, capable of definite ascertainment, and the law contemplates the existence of the fact as the ground of the attachment. The phraseology of this section affords no ground for contending that the motion to abate should turn upon the belief of the affiant, and the grounds which he had for such belief.
The third section gives an attachment upon, complaint that the defendant intends to remove, is removing, or has removed his effects out of the State, &c., and an affidavit of the truth of the complaint, to the best of the affiant’s belief. Here again the attachment is given on the ground that certain things exist, and the fact that they do exist is established prima facie by the oath of the affiant. On the motion to abate such an attachment, the enquiry must-be, whether the fact exists on which the attachment was based, wher? the fact is one that admits of definite ascertainment, as that the defendant “has removed” his effects, or whether there was probable cause to believe that he intended to remove, &c., which is only a probable fact, and *not capable of positive ascertainment. The words of this section cannot be construed so as to refer the right to the attachment to the mere belief of the affiant, on probable grounds.. They clearly predicate the right to the attachment on the existence of the facts, actual or probable, which authorize it, and allow- the existence of those facts to be established, for the purpose of suing out the attachment, by the oath of the affiant that he believes them to exist. The same remarks a'pply to the fourth section.
When the fact is such as I have called a probable fact, as that an intention exists to do an act, or that an act will be done in the future, all that we can say of it is, that from evidence presented to .our minds, we infer, conclude or believe that the fact exists, or that it will occur, and that the grounds of such inference, conclusion or belief are sufficient to justify it. If these grounds are sufficient to justify such inference, conclusion or belief, there is sufficient cause for the attachment; for that is the highest degree of certainty of which the nature of the case admits. But if, when we look at all the facts, we find that sufficient grounds did not exist for the inference, conclusion or belief, then we cannot say that such probable fact exists or will occur. In such a case, we cannot say that *845 the attachment was issued on sufficient cause. When, on the other hand, the fact is such a one as has an actual existence and admits of absolute proof, we can affirm that it does exist, and not merely, as in the other case, that we believe it to exist, •or believe that it will occur, and that we have sufficient grounds for our belief. Perhaps this distinction between the two •classes of facts contemplated by the attachment law, may account for the use, in the 22d section, of the two expressions, ‘ ‘on false suggestions” and “without probable cause. ’ ’ But this does not seem to be a matter of any practical importance.
But it is insisted, that the language of the second section *makes the right to the attachment which it provides for, depend altogether upon the belief of the affiant, and that, in reference to an attachment under that section, the only •enquiry under the 22d section is, whether the affiant believed what he swore to, and had present to his mind sufficient grounds to justify that belief, as in an action for wrongfully and maliciously suing out an attachment; in other words, whether he acted honestly and discreetly.
In considering this construction, several observations occur at the outset:
1. It imputes to the Legislature an intention and policy, in reference to attachments under the second section, altogether different from that which it had in reference to attachments under the other sections.
2. It makes the enquiry, on the motion to abate, refer to matters which, in the nature of things, evidence can scarcely reach, namely, the sincerity of the affiant’s belief, and the extent of his information.
3. It affords a most inadequate protection against the abuse of the process, by making a man subject to it, though he proves, to demonstration, that he was not doing, or did not intend to do, the act which renders an attachment proper and necessary, and simply because appearances were against him.
4. It is unjust to the creditor himself, who must lose the benefit of his attachment, though the facts of the case clearly entitle him to it, because the affiant did not happen to know all the facts, or enough of them to justify him in his belief, though he acted honestly, and his belief was in accordance with the real truth of the case.
5. It makes the rights and liabilities of the defendant depend not, as in other cases, upon his own conduct as ascertained by judicial enquiry, but on the plaintiff’s opinion of it, upon imperfect knowledge of the facts, provided the facts known justify suspicion, standing alone.
*1 concede that we must adhere to and abide by the language of a statute where it is clear and unambiguous, and not depart from it upon a conjecture that the Legislature could not have meant what it has plainly said. This has been called the “golden rule.” (20 Eng. L. & Eq. R. 231; 22 Ibid. 209.) But a strict adherence to the words of the statute is only required when the intention is so plainly expressed that it cannot be mistaken. The paramount enquiry is, what was the intention of the Legislature. As a primary rule, the intention is to be collected from the words where they are explicit. But unless the -words are so explici t and peremptory as to exclude all construction, the court will consider not merely the words, but the intent to be collected from the cause and necessity of the act being made, from a comparison of its several parts, and of other acts in pari materia, and even from extraneous circumstances which may throw light on the subject. Dwarris Stat. 693; Fox’s adm’r v. Commonwealth, 16 Gratt. 1; Hawkins v. Gatherlecole, 31 Eng. L. & Eq. R. 305; United States v. Freeman, 3 Howard U. S. R. 556; Sedgwick 236. And in putting a construction upon the provision of the 22d section we must enquire, in accordance with the rules laid down in Heydon’s case, 3 Rep. 7: 1. What was the law before that provision was enacted. 2. What was the mischief and defect against which the previous law did not provide. . 3. What remedy the Legislature provided to cure the mischief. 4. The reason of the remedy.
Eirst, then, as to the language of the law. The second section gives the attachment on affidavit: 1. That the plaintiffs claim is believed to be just. 2. That the affiant believes the plaintiff is entitled to recover so much at the least. 3. That the áffiant believes that the defendant is removing, or intends to remove, his effects, • &c. The affidavit is not required to be made by the plaintiff himself.
*When the allegation is that the defendant intends to remove his effects, all that the affiant can possibly swear to is his belief. So where the allegation is, that he is “removing his effects,” meaning that he is engaged in a course of removing them from time to time, so that, &c., all that the affiant can affirm is his belief. The provision then amounts, in substance, to the same thing as if the statute had said, “upon affidavit that the defendant is removing, or intends to remove.” And how would that differ, in substance, from the third and fourth sections, which give the attachment on complaint that certain facts exist, or will occur, and provided that the truth of the complaint shall be verified according to the affiant’s belief? In one sense, the'law in each case gives the attachment upon the belief of the affiant, and because he believes. But the law does not mean to make the rights of the defendant, in either case, dependent ultimately upon the belief. It means to make them dependent upon the existence of a state of facts in -which it allows the extraordinary remedy by attachment, for the sake of justice and from necessity, and only allows the affidavit to be evidence prima facie of the existence of such facts, so as to authorize the process to issue.
What, then, is the ‘-‘sufficient cause” for issuing such an' attachment, within the *846 meaning of the 22d section? Is it the existence of the probable fact sworn to by the affiant, and which, according to the polic}' of the law, justifies the remedy by attachment ; or is it the mere belief of the affiant that such fact does exist or will occur, entertained honestly and upon reasonable grounds. If we look to the policy of the law, to the analogy of other sections besides the second, and to the object for which the provision of the 22d section was enacted, and do not adhere to the strictest literal interpretation of the mere words, the answer must be, as it seems to me, that it is the former.
*It is obvious from what has been said, that the language does not necessarily require the other construction. It is not so explicit and unequivocal as to prevent our resorting to the ordinary rules of construction to ascertain the intention of the legislature. I have adverted to the policy of the attachment law, and to the construction of the first, third and fourth sections, in connection with the twenty-second, and I need say no more upon those subjects. Let us now consider the construction of the twenty-second section with reference to the rules above suggested in analogy to the rules laid down in Heydon’s case. In Mantz v. Henley, 2 Hen. & Mun. 308, upon an attachment against an absconding debt- or, issued on the ground that the affiant had grounds to suspect and verily believed that the defendant intended to remove his effects, the defendant filed a plea in abatement, which was informal, but the purpose of which was to controvert the facts alleged as the ground for the attachment. The plea was held bad on demurrer, because it was defective in point of form; but Judge Roane regarded it as substantially sufficient : thus conceding the right of the defendant to controvert the facts alleged as the ground of the attachment. In that case, the affidavit alleged that the affiant had grounds to suspect and verily believed, &c. The plea did not take £ssue on these averments of the affidavit, and was not objected to for the failure to do so, but took issue on the facts which the affidavit alleged he believed, and had grounds to suspect. In Redford v. Winston, 3 Rand. 148, Win* ston issued an attachment for rent upon an affidavit that he had sufficient grounds to suspect and verily believed that Redford would remove his effects, &c. Upon the return of the attachment Redford tendered a plea, that Winston has not sufficient grounds to suspect and verily believe that said Redford would remove the effects, &c. The court held that this plea was properly rejected; and *Judge Green intimated the opinion, that in an action against an absconding debtor, the defendant could not plead that the attachment was founded upon a false suggestion, but was left to his action on the attachment bond. And it is worthy of note, that both Judge Green and Judge Carr regarded the plea tendered by Winston as putting in issue the fact of his being about to remove his effects, and not as putting in issue merely the sufficiency of the grounds which the affiant had within his knowledge for his belief. The point decided in Redford v. Winston was, that in an attachment for rent, the ground for issuing the attachment cannot be controverted. In 1 Rob. (old) Prac. 628, the author intimates his disapproval of Judge Green’s dictum in Redford v. Winston.
Thus it appears that before the adoption of the Code, it was settled that, in an attachment for rent, it was not competent for the defendant to controvert the grounds on which the attachment was issued, and that it was doubtful and unsettled whether this could be done in an attachment against an absconding debtor. The twenty-second section was intended to provide a remedy for this defect in the law, and to extend to all classes of attachments the right which, in Mantz v. Henley Judge Roane conceded to exist in respect to an attachment against an absconding debtor. And accordingly, the revisors, in their note to this section, say, in reference to the provision in question: “ This is according to Mantz v. Henley, 2 Hen. & Mun. 308. A different rule as to attachments for rent was laid down in Redford v. Winston, 3 Rand. 148. * * * By the section as proposed by us, an attachment for rent issued without sufficient cause, is placed upon the same footing as any other attachment.”
In support of the construction which I am controverting, reference is made to the act of March 2d, 1827, (Supp. R. C. 256,) and to the act of February 6th, 1841, *(Sess. Acts p. 77,) which are cited in the margin of the Code. The act of March 2d, 1827, provides that it shall be lawful for the tenant “to contest the right” of his landlord to sue out the attachment; and if it shall be made to appear to the court that the landlord had not “just cause to suspect” that his tenant would remove his effects, &c., judgment shall be entered for the tenant, &c. The act of February 6th, 1841, provides to the same effect, and also that judgment shall be entered for the tenant, if it shall appear “that for any other cause an attachment should not have issued. ’ ’ These acts shed not the least light upon the question before us. It still remains to be considered, what is the “right to sue out the attachment’ ’ which may be contested, and whether the ‘ ‘just cause to suspect,” has reference to the actual facts of the case, or only to such of the facts as were present to the mind of the landlord when he sued out his attachment. The act of March 2d, 1827, was evidently passed in consequence of the case of Redford v. Winston, and in order to allow such a defence as was attempted in that case, which, as we have seen, controverted the probable facts alleged as the ground of the attachment, or rather the ground to suspect the existence of those facts, and not merely the belief of the affiant, and the presence to his mind of facts sufficient to justify that belief.
*847 A question analogous to that I am now considering has been decided under the attachment law of Missouri. In Chenault v. Chapron & al., 5 Missouri R. 438, an attachment was issued upon an affidavit that the affiant “verily believed” that the defendant was about to remove his property out of the State. The statute authorized the defendant, in every case of attachment, to file “a plea in the nature of a plea in abatement, putting in issue the truth of the affidavit upon which such attachment was sued out.” The defendant pleaded that he did not intend to remove *his property out of the State. To this plea the plaintiff demurred, and assigned for cause of demurrer that the plea did not deny that the affiant did believe that the defendant was about to remove his effects out of the State. The demurrer was sustained by the court below; but the judgment was reversed by the Supreme Court. Edwards, J., delivering the opinion of a majority of the court, said : ‘ ‘ Whether the affiant really believes the affidavit true or false, is a matter wholly immaterial, except so far as his own conscience is concerned. He may very honestly believe it true, and yet it may be wholly false. It is not, then, the truth of his belief as to the existence of the fact which is to be put in issue, but it is the existence of the fact itself; that is, whether the defendant was or was not about to remove his property out of the State. The belief of the affiant of the existence of one of the causes mentioned in the first section of the attachment law will authorize the issuing of the attachment, but nothing more. On the trial of an issue as to the truth of the affidavit, the fact authorizing the attachment to issue must be found to exist, or the suit will be dismissed. It was not necessary then that the plea should put the affiant’s belief in issue. The frequency of attachments, in cases where credulous affiants merely believed the cause to exist, but where in fact none of the causes authorizing creditors to sue out attachments did really exist, had grown into a great evil, and to remedy this the Legislature passed the last section of the act amenda-tory of the attachment law. In authorizing the plea in abatement, then, the Legislature intended to strike, not at the shadow, but at the substance of the evil; not at the truth or falsehood of the affiant’s belief, a thing that no evidence could touch, but at the truth or falsehood of the facts stated in the affidavit, a thing that was tangible.”
The attachment act of New Jersey gives an attachment ^'against an absconding debtor, “if any creditor shall make oath that he verily believes that his debtor absconds,” &c. The courts of that State hold that it is competent to the court, under the general jurisdiction to prevent the abuse of process, to quash an attachment issued without sufficient cause. In the City Bank of New York v. Merritt, 1 Green R. 131, it was insisted that the affidavit was conclusive; but the Supreme Court of New Jersey' held otherwise. The Chief Justice said: “The plaintiff or his agent may, from wrong information or other causes, very honestly and reasonably fall into error concerning the absconding of the debtor; but the consequences would be pernicious if the debtor was irrevocably fixed by it, and his property wrested from him by force of the attachment. ’ ’ The same was held, by the same court, in Brundred v. Del Hoys, 1 Spencer R. 328; and the court said in that case, that the proceedings should be set aside, though the plaintiff may have acted in good faith in making the affidavit.
It has also been urged that the second section of the attachment law was introduced as a substitute for bail, as was said by this court in Pulliam v. Aler, 15 Gratt. 54. This is supposed to explain why the attachment under that section is given upon the mere belief of the affiant, and to show the propriety of not abating it when sued out honestly and upon reasonable grounds of belief.
There is no doubt that the object, or one of the objects, contemplated by the introduction of this section was to afford a substitute for bail under the former law. But, while that is so, the attachment provided for by it is not governed by the same rules which applied to bail. Bail gave the creditor no security except for the presence of the defendant when a ca. sa. should be issued against him: if the ca. sa. could be executed, the bail was discharged. The attachment gives a security for the debt by a lien on *the property of the defendant. Bail was demandable as matter of right, and without any affidavit, in all actions of debt upon written obligations for the payment of money, and in all actions of covenant and detinue. In all other actions, it might be obtained by the order of a judge or justice of the peace, upon proper affidavit verifying the justice of the plaintiff’s action, and showing probable cause to apprehend that the defendant would depart from the jurisdiction of the Commonwealth. But there was no provision made for discharging the order for bail, or for releasing the bail, upon proof that there was not sufficient ground to apprehend that the defendant would leave the Commonwealth. The defendant, when arrested upon a writ on which bail was required, could relieve himself by a confession of judgment, after which, if he was prayed in custody, he could be discharged upon taking the oath of an insolvent debt- or. Otherwise, he must give bail, or be committed to prison. But the 22d section of the attachment law makes provision for discharging an attachment issued under the 2d section, as well as any other, w’hen issued without sufficient cause. The 2d section gives an attachment in lieu of bail upon the same easy terms upon which bail might be obtained on the order of a judge or justice of the peace ; but there the analogy ceases. The provision for discharging the attachment when issued “without sufficient cause,” to which there was no corre *848 sponding' provision in the law respecting bail, destroys all further analog}'. The fact that the attachment was provided as a substitute for bail, is thus deprived of all force in reference to the question I am now considering.
Reliance is also placed upon the 30th section of the attachment law, which is in these words: 1 ‘If upon defence being made, in any case in which, property is seized under an attachment, that the attachment was sued out without sufficient cause, it 'be found either by the court or *by the jury, if one be empanelled, that the defence is well founded, judgment may be entered for the defendant against the ■ plaintiffs for the damages sustained by the defendant by reason thereof.” From this it is argued, that the enquiry upon a motion to abate an attachment on the ground that it was issued without sufficient cause, is the same as in an action to recover damages for suing out an attachment without sufficient cause; and must be confined, therefore, to the good faith and reasonable discretion of the plaintiff or affiant. But I do. not perceive the force of this argument. We have seen that, in the first, third and fourth sections of the .chapter, the right to the attachment is made to depend upon the existence of certain actual or probable facts, the existence of which is sufficiently verified for the purpose of suing out the attachment by the affidavit of the affiant- to the best of his belief. There is no room to contend, upon the language of these sections, that, upon a motion to abate the attachment, the attachment can be sustained upon the ground only that the affiant believed what he swore to, and that he was justified in believing it. And yet, in an action to recover damages, it would be a sufficient de-fence that the defendant acted in good faith and upon reasonable grounds of belief. In such cases, therefore, the enquiry upon a motion to abate is not the same as in an action for damages. Where,Lin such a case, on a motion to abate; or after judgment on such a motion, which seems to be the meaning of the 30th section, damages are claimed under that section, the court, if it tries the case, must distinguish between the grounds of the motion to abate and the grounds of the claim for damages. So if the case is tried by a jury, the court must take care, by proper instructions, to see that the same distinction is observed. And so in reference to an attachment under the-2d section.
*It has been objected that the construction upon which I insist, will render the remedy given by the second section of little value, and deter parties from resorting to it. The only effect of that construction, however, is to abate an attachment whenever it is made to appear that a state of things did not exist at the time it was issued, in which such a remed}' is proper under the law. Is it any objection to the construction, that it will have the effect of confining the remedy to the cases in which the law designed to give it, and of preventing its abuse, by the application of it to other cases, which are not within the reason and policy of the law? The effect upon the policy of the law, and upon the rights of the defendant and of his other creditors, is the same, whether the misapplication of the remedy results from mistake or from design. The construction which I give to the law will not only confine the remedy to the cases which are proper for such a remedy, but it will make parties more cautious i n resorting to it than they would be under the other construction. Is this a just ground of objection, when we consider the harshness of the remedy and its liability to abuse?
Entertaining these views of the construction of the attachment law, and considering the weight which, under the decisions of this court, I am bound to attribute to the judgment of the court below, upon the evidence certified, I feel some doubt whether the judgment in this case ought to be reversed. But my impressions upon this subject are not of so clear and decided a character as to induce me to dissent from the opinion of my brethren, who have no difficulty as to the conclusions which ought to be drawn "from the evidence. I forbear to discuss the evidence, lest any thing I might say might prejudice the trial of the action. I will only add, what is necessary to a distinct expression of my opinion, that I think the undisputed facts of this case show that there was sufficient cause when the attachment ^'issued, to believe that the defendants were removing their estate, or the proceeds of the sale of their property, or a material part of such estate or proceeds, out of this State, so that process of execution on a judgment in the suit, if obtained, would ■ be unavailing. The court below must be taken to have decided upon the evidence that the defendants, in point of fact, were not so removing. The doubt which I have intimated is whether, in view of the weight to be attributed, under the decisions of this court, to the judgment of the court below on this point, we can say That it came to a wrong conclusion in respect to .it.
Upon the whole, I concur in the order which is to be entered reversing the judgment.
RIVES, J.
After the fullest consideration, I am unable to acquiesce in the construction which the President of the court has placed upon the twenty-second section of the attachment law. It confounds the issue under a motion to abate, with the issue in an action on the case for the abuse of this process. In the latter, I might concede to the plaintiff in the attachment, the privilege of defending himself on the question of damages, by proof of justifiable cause for his resort to this 'exceptionable remedy; but when this section explicitly enables the defendant to ‘ ‘contest the right to sue out the attachment,” I can find no warrant in precedent, authority or reason for restricting that contest to the truth or *849 "bona fides of the plaintiff’s affidavit, rather than to the existence of the facts which it purports to verify. Our legislation consequent upon the decision of Redford v. Winston, 3 Rand. 148, shows the intention of the Ivegislature to make the facts or allegations of the plaintiff’s affidavit traversable, and to allow of a defence that did not exist in cases of bail, and that was specially denied in that particular case. But this branch of the case is exhausted by my brother Joynes; and it is *sufficient for me to declare my full and hearty concurrence in his opinion and reasoning upon it.
I do not, however, share his doubts as to the judgment of reversal. In this case, as in Mitchell, &c., v. Baratta, &c., 17 Gratt. 465, I readily resolve all doubts and conflicts of evidence in favor of the judgment below; but I must be permitted to make and follow my own inferences from the plain and undisputed facts of the cause. For reasons already assigned, I refrain from any comment on the evidence. The matter in issue under the motion to abate, was the act of “removing their effects;” and in view of the shipments to Baltimore and New Orleans, and their correspondence with the auctioneers of those cities, I cannot escape the conclusion that the appellees were at the time of the suing out of the attachment in a course of removing their effects, or “a material part” thereof, so that execution upon a judgment thereafter to be obtained would be unavailing.
The judgment was as follows:
The court is of opinion that the said Hustings Court did not err in overruling the objection of the plaintiffs to the jurisdiction of the said court at a monthly term thereof, to hear and decide the motion of the defendants to abate the said attachment on the ground that the same was issued upon false suggestions and without sufficient cause, as mentioned in the first bill of exceptions.
And the court is further of opinion that the said Hustings Court did not err in hearing and deciding the said motion without the intervention of a jury; as mentioned in the second bill of exceptions.
But the court is also of opinion that the •said Hustings Court did err in deciding that the said attachment was issued upon false suggestions and without sufficient cause, *and in rendering judg- • ment that the said attachment be abated; as mentioned in the third bill of exceptions.
Therefore it is considered that the said judgment be reversed and annulled, and that the plaintiffs recover against the defendants their costs by' them expended in the prosecution of their writ of supersedeas aforesaid here. And this court proceeding to enter such judgment as the said Hustings Court ought to have entered, it is further considered that the motion of the defendants to abate the said attachment on the ground that the same was issued upon false suggestions and without sufficient cause be overruled, and that the plaintiffs recover against the defendants their costs by them about their defence to the said motion in the said Hustings Court expended. And it is ordered that this cause be remanded to the said Hustings Court for further proceedings to be had therein. Which is ordered to be certified to the said Hustings Court.