## 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

### RICHMOND LOCOMOTIVE WORKS *v.* FORD.

#### June 17, 1897.

1. PLEADING—*Declaration in action for personal injuries—Sufficiency of.*—In an action for damages against a corporation for personal injury inflicted by its servants, it is not necessary to aver in the declaration whether the plaintiff was on the premises of the defendant as a trespasser, licensee or employee, when the declaration distinctly sets forth when, where, in what manner, and under what circumstances, the plaintiff was injured by the default, negligence, or improper conduct of the defendant's servants.

2. PLEADING—*Declaration in an action for personal injury—Sufficiency of—Bill of particulars.*—In an action to recover damages for a personal injury inflicted on the plaintiff, resulting from a failure on the part of the defendant to furnish proper tools with which to do the work assigned, where the declaration avers that it was the duty of the defendant to furnish "suitable and reasonable tools, implements or means, then well known to the defendant and possessed and kept by said defendant," with which to do the work, it is unnecessary to aver what the tools were, or to furnish any bill of particulars thereof.

3. EVIDENCE—*Experts—Comparing defendant's method with that of another.*—A witness having sufficient knowledge may testify as to the general practice of machine shops in moving heavy wheels, or as to the comparative safety of different methods of doing that kind of work, but cannot show that a different method of another shop is better than that adopted by the defendant.

4. EVIDENCE—*Who are experts—Discretion of trial court.*—Whether a witness is qualified to testify as an expert is largely a matter in the discretion of the trial court, and its ruling allowing a witness to so testify will not be reversed unless it clearly appears that he was not qualified.

5. EVIDENCE—*Personal injury—Subsequent acts of other employees.*—In an action by an employee against a corporation for a personal injury, it is error to allow other employees to testify what they did after the time of the injury, and their reasons therefor.

6. MASTER AND SERVANT—*Boss of gang—Fellow servant.*—The boss or foreman of a gang of hands with whom he works, who has no power to

Statement.

employ or discharge members of the gang, but reports their delinquencies to a superior, is a fellow servant with members of the gang, although he is in charge and control of the gang, and directs the work to be done by them.  His superiority in authority does not change his relation to the gang.

7. MASTER AND SERVANT—*Safe place to work—Negligence of fellow servant.*—It is the duty of the master to furnish and maintain a reasonably safe place in which the servant is to work, and this duty is personal to the master.  But if the place is reasonably safe in the first instance, and is afterwards rendered unsafe by the negligent manner in which the boss or foreman of a gang of hands directs the work to be done, in doing which an injury is inflicted, the master is not liable for such injury.

8. MASTER AND SERVANT—*Warning of dangers to be given by master.*—It is the duty of the master to inform the inexperienced servant of dangers ordinarily incident to the service, and if he fails to do so, and the servant has no opportunity to observe them, he will not be held to have assumed risks not obvious to one of his age, experience, and judgment.  But this duty applies only to dangers which are known or ought to have been known to the master, and which the servant, on account of his youth or inexperience, is ignorant of, and which he cannot reasonably be expected to discover by the exercise of ordinary care.

9. INSTRUCTIONS—*Lack of evidence to support.*—An instruction should not be given when there is no evidence on which to base it.

Argued at Richmond.    Decided at Wytheville.

Error to a judgment of the Law and Equity Court of the city of Richmond, rendered July 1, 1895, in an action of trespass on the case wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

The declaration in this case is in the following words and figures, to-wit:

"State of Virginia, City of Richmond, to-wit:

"In the Law and Equity Court for the city of Richmond.

"Robert L. Ford, an infant under the age of twenty-one years, who sues by his next friend, Monroe Ford, complains of the Richmond Locomotive and Machine Works, a corporation duly chartered under the laws of the State of Virginia, who has been duly summoned to answer a plea of trespass on

the case—For this, to-wit: that heretofore, to-wit, on the 26th day of March, 1894, the defendant were the owners of a certain manufacturing establishment and the yard attached thereto situated in Henrico county, Virginia, and of a certain locomotive wheel of great weight, which was then in said yard under the control and management of certain agents or servants of said defendant; that it was the duty of said defendant, by and through said agents or servants, on the said day, to so control, manage or handle this wheel, that they, the said defendant, should not carelessly and negligently, by and through said agents or servants, injure and damage the plaintiff, with or by means of said wheel, when not guilty of any negligence on his part; yet the said defendant on a certain day, to-wit: On the day last aforesaid, by said agents or servants so carelessly and negligently behaved and conducted itself in and about the management, control, and handling of said wheel, that by and through the carelessness, negligence, and improper conduct of said defendant, by and through its said agents or servants, the said wheel was allowed to fall upon and strike the plaintiff, who was at the time of such injury lawfully and rightfully in said yard and was guilty of no such negligence, whereby the right leg of the plaintiff was wounded, bruised and injured, and so broken and mashed that it became and was necessary to have said leg amputated between the knee and ankle, which was accordingly done on the said certain day, by means of which premises the said Robert L. Ford suffered and underwent great pain on account of said injury and said amputation, and has been hitherto hindered and prevented from transacting and attending to his necessary and lawful affairs by him during all that time to be performed and transacted, and lost and was deprived of divers great gains and profits, which he might and otherwise would have acquired and derived, and will be permanently hindered and prevented from following certain employments or business, by which he would earn and receive large compensation and

salary, or wages, and on account of which said wounds or injuries he was forced to pay and expend divers large sums of money, to-wit, $100, in and about endeavoring to be cured of said injuries or wounds, and was otherwise greatly injured, wounded and damaged all as aforesaid, to-wit, at Richmond aforesaid.

"2d. (Here regard as part of this count as if rewritten out so much of the first count from and inclusive of the words "For this" down to the words "that it was the duty.")

"That said Robert L. Ford was, on the day above mentioned, employed by said defendant, at their instance and request, to help other employees of the defendant to handle or move said wheel, that it was the duty of said defendant to have furnished and allowed the plaintiff and its other said employees, room or space enough to handle or move the same with due and reasonable safety or security when proceeding to do so with due and reasonable care and caution. Yet the said defendant by their agent, having authority or control over the said Robert L. Ford, not regarding their duty as aforesaid, but contriving to injure and aggrieve the said Robert L. Ford did not on the said day, to-wit, on the day aforesaid, furnish or allow the said Robert L. Ford and the other employees assisting in moving said wheel, sufficient room or space in which to move the same with reasonable safety and security, when attempting to do so with reasonable care, but ordered or required the said Robert L. Ford and the said other employees to attempt to handle or move said wheel in a certain space too narrow and insufficient in which to so move it; whereby the said wheel, although being handled with due and reasonable care by the said Robert L. Ford and the said other employees, got loose or escaped from the control, support, and management of the said Robert L. Ford and said other employees and fell upon and struck the said Robert L. Ford and so broke, wounded, and mashed or injured the right leg.

("Here regard as a part of this account as if rewritten bal-

ance of first count from and including the words "that it became and was necessary.")

"3. (Here regard as part of this count as if rewritten out so much of the first count from and including the words 'For this,' down to the words 'that it was the duty.')

"That the said Robert L. Ford was, on the day above mentioned, employed by said defendant at their instance and request to help other employees of the defendant to handle or move said wheel; that it was the duty of the said defendant to have furnished or supplied the plaintiff and its said other employees with suitable and reasonable tools, implements or means, then well known to the said defendant, and possessed and kept by said defendant in its said yard, so that the said wheel could be handled with reasonable safety and security when handled with due and reasonable care.   Yet the said defendant, not regarding its duty as aforesaid, but contriving to injure and aggrieve the said Robert L. Ford did not furnish and supply to him and the other said employees such suitable and reasonable tools, implements or means so that the said wheel could be handled with reasonable safety and security, when handled with due and reasonable care, but required the said Robert L. Ford, and the other employees on the day and date last mentioned to attempt to handle said wheel without any such tools, implements, or means.

"(Here regard as a part of this count, as if written in full balance of the second count from and including the words 'whereby the said wheel.')

"4th. (Here regard as a part of this count as if re-written in full out so much of the first count from and including the words, 'For this,' down to the words, 'that it was the duty.')

"That the said Robert L. Ford was, on the day above mentioned, employed by the said defendant at its instance and request to help other employees of the said defendant to handle and move said wheel, that said Robert L. Ford owing to his inexperience and lack of skill and judgment was unfit so

to assist said other employees in the said work of handling or moving said wheel; that it was the duty of the said defendant not to have ordered or required said Robert L. Ford to assist in handling or moving said wheel, which was dangerous work, unless and until he had been fully warned and instructed as to the danger of said work, and how such danger might be avoided to a reasonable extent. Yet the said defendant, not regarding its duty as aforesaid, but contriving to injure and aggrieve the said Robert L. Ford did on the said day require him to assist as above mentioned in the work of attempting to handle or move said wheel without giving him such warning or instruction.

"(Here regard as a part of this count as if rewritten in full balance of the second count from and including the words 'whereby the said wheel.')

"To the damage of said Robert L. Ford $15,000, and therefore he brings suit."

After all the evidence had been introduced, both plaintiff and defendant asked a number of instructions, and the court gave the following instructions, which included some of those asked for:

"No. 1. The jury are instructed that the burden is on the plaintiff to prove that his injury was caused by the negligence of the defendant as charged in the declaration, and unless he proves that the defendant was guilty of the negligence so charged they must find for the defendant. If the jury believe that the plaintiff was injured by such negligence of the defendant and the defendant proposes the defence that the plaintiff contributed to the injury by his negligence, the burden is on the defendant to prove contributory negligence, and unless the jury from the whole evidence believe that there was contributory negligence they should find for the plaintiff. And in considering whether the plaintiff has been guilty of contributory negligence they are instructed that where an employee in obedi-

ence to the orders of his superiors, incurs the risk of doing work, under circumstances more than ordinarily dangerous in his line of work, yet which is not so dangerous as to threaten immediate injury, or where it is reasonably probable that it may be safely done by extraordinary caution and care he is not regarded as necessarily guilty of contributory negligence in obeying such order.

"No. 2. Although the jury shall believe from evidence that the injury was caused by the lack of sufficient space to do work, still if they shall further believe from the evidence that such lack of space was due to the location of piles of tires near the wheels which were being moved, and that such piles of tires could have been moved by the gang engaged in the work to other parts of the yard, so as to give sufficient space, and that the gang had the right to move said tires if they chose so to do, and that in the exercise of reasonable care they ought to have removed them, or that such lack of sufficient space was caused by the piling of the first wheels that were moved too near to the remaining wheels, and that there was room enough to have piled them further off, then defendant was not responsible for any lack of sufficient space so existing or caused, and they must find for the defendant.

"No. 3. It was the duty of the plaintiff to acquaint himself with the dangers incident to the work about which he was employed and the law presumes him to have been cognizant of all perils that were open, obvious, and usually attendant upon an employment such as his. But if the plaintiff was injured by a cause or danger not usually or reasonably attendant upon an employment such as his there is no presumption of law that he was cognizant of any such risk or assumed it, and the burden is on the defendant to show affirmatively that he was cognizant of it and assumed it to the same extent that it is on the defendant to show any other contributory negligence on the part of the plaintiff.

"But if the jury believe from the whole evidence before

them that the plaintiff knew and appreciated or reasonably ought to have known and appreciated the danger or peril attending the particular occupation he was engaged in, then he assumed the risk of that particular service.

"No. 4. Even though the jury shall believe from the evidence that the defendant failed to provide a safe place, and proper and suitable instrumentalities for doing the work, still if they shall believe from the evidence that the cause of the plaintiff's injury was the want of proper care on the part of other employees of the defendant company who were engaged in the work along with the plaintiff, and not by any fault of the defendant in providing a suitable place and proper appliances for doing the work, they must find for the defendant.

"No. 5. The defendant was not the insurer of the plaintiff's safety, and was not bound to provide the best and safest place nor the best and safest method for doing the work.  If in the exercise of ordinary care it provided such place and such method for doing the work as were reasonably safe and adequate in view of the nature of the work to be done, it discharged its full duty to the plaintiff, even though the jury shall further believe that a safer place and a safer method of doing the work might have been adopted.

"And by ordinary care is meant such caution and prudence as under all the circumstances of the particular work to be done a man of ordinary care and prudence would exercise.

"But if the jury believe from the evidence that the defendant did not furnish or allow the said Robert L. Ford and the other employees who assisted in moving the wheels mentioned in the declaration, sufficient room or space in which to move the same with reasonable safety and security, when attempting so to do with reasonable and ordinary care, but ordered or required the said Robert L. Ford and said other employees to attempt to handle or move said wheel in a space too contracted or insufficient to handle or move the same, and that by reason of such insufficiency of space, the said wheel, although

being handled with due and ordinary care by the said Robert L. Ford and the other employees, got loose or escaped from the control, support, or management of the said Robert L. Ford and said other employees, and fell upon and injured the said Robert L. Ford, they must find for the plaintiff unless they shall believe further, that the said Robert L. Ford in undertaking to do said work in such space and in the method shown, knew and appreciated the danger of doing the work in the method in which it was being done in such contracted space.

''Or that in undertaking to do said work in the place and method detailed he failed to exercise such care and caution as an ordinarily prudent person of his age, knowledge or opportunities of knowledge of the danger ought reasonably to have exercised.

''No. 6. The jury are instructed that if the plaintiff knew, or having regard to his age, experience, and capacity, ought to have known, when he assisted in moving the wheels, that the place where he assisted in moving the wheels, that the place where he was required to work and the method adopted for moving the wheels, were not reasonably safe and adequate, then he took upon himself the risks arising from such want of safety and adequacy, if such lack of safety and adequacy existed, and they must find for the defendant, although they may believe that he was acting under the orders of Fogg.

''No. 7. If the jury believe from the evidence that the method of moving these wheels, which was used, when the plaintiff was hurt was the same, which had been before used during the service of the plaintiff in the defendant's employment, and that the plaintiff knew or had the opportunity of knowing of the use of that method of moving such wheels, and knew and appreciated, or had the opportunity of knowing and appreciating, the risk incident thereto, and continued in the defendant's employment without any promise on the part of the defendant to render the same less hazardous, then the plaintiff took the risk incident to that mode of moving the

wheels, although the jury may believe that the defendant might have adopted a safer mode of doing the work. And no negligence can be imputed to the defendant on account of the mode adopted for moving the wheels. Yet it does not follow that the plaintiff took the risk of injury from the lack of space to do the work in; for the law on this last point the jury must be governed by the fifth instruction.

"No. 8. The jury are instructed that no duty rests upon the employer to inform or instruct a minor employee either of dangers that are known to him, and if known to him ought to have been appreciated, or of the ordinary dangers of his occupation that are so open and apparent that one of his age, experience and capacity would, under like circumstances, know and appreciate them.

"No. 9. If the jury believe from the evidence that the moving by hand of a locomotive wheel is attended with danger to those handling the same, although exercising ordinary and reasonable care in so doing, that Robert L. Ford was ordered by the defendant to assist other employees of the defendant to so handle or move the locomotive wheel mentioned in the declaration, without warning or instructing him as to the danger of such work and how to handle the same, and to avoid the danger and risks attending such handling, that he did not know or appreciate such danger or risks; that said danger or risks could or would have been removed by the use of a crane or by a piece of timber run through the hub of the wheel; that the doing of such work by the means of a crane or piece of timber was under the circumstances existing at the time of the accident such a precaution as the defendant should have taken, that it failed to take such precaution, and the said Robert L. Ford was injured because of such failure, they must find for the plaintiff unless they further believe that the said Robert L. Ford, in undertaking to assist in moving said wheel by hand, did know and appreciate the danger, or did not exercise such care and caution

as an ordinarily prudent person of his age and knowledge or opportunities of knowing of the alleged danger would have exercised.

"No. 10. The jury are instructed that in this action, in deciding whether the defendant was guilty of negligence or not, they are not to take into consideration the failure of the defendant company to place the wheels under the crane in the yard when they were moved out of the shop.

"No. 11. If the jury believe from the evidence that Robert L. Ford was employed by the defendants, and put under the control and subject to the orders of Fogg; that Fogg was given the power to order Robert L. Ford as to the manner in which a piece of work should be done; that for a refusal to obey the orders of Fogg, the said Ford would have been discharged; that Fogg ordered him and the others who were engaged in moving the wheels at the time of the accident, to place the first two wheels where and in the manner in which they were placed, and that in requiring them to be put there he caused the space in which the men had to work to be more contracted and the work to be more dangerous; that the third wheel, which is alleged to have struck said Ford, was handled by him and the others of the gang without negligence, and with reasonable and proper care under the circumstances; that while they were so handling said third wheel the first two fell down, and made the space still more contracted; that the men still continued to handle said wheel without negligence, and with such care and caution as could be reasonably and ordinarily expected of men of their age and experience under the circumstances; that owing to the contracted space caused by the first two wheels being put where they were placed and afterwards falling down, the men were not able to control the said third wheel, and that it therefore, and without negligence on their part, fell and injured said Ford, they must find for the plaintiff; unless they believe that Ford knew and appreciated the danger that might

attend the obeying of Fogg's orders, in the first instance, and that as a man exercising such care and caution as a person of his age and experience would ordinarily, exercise, he ought not to have obeyed them; or that after the first two wheels fell, said Ford had the right to stop, and, in the exercise of such care and caution as could be reasonably expected of one of his age and experience, ought to have stopped moving said third wheel until the space in which they had to work had been enlarged by the removal or proper placing of said first two wheels, or unless they believe that the said Ford in undertaking to assist in moving said third wheel after the first two had been placed in the position and condition in which they were first put, did not exericse such care and caution as an ordinarily prudent person of his age and knowledge or opportunities of knowledge of the alleged danger would have exercised.

"No. 12. The jury are also instructed that the fear of the plaintiff that he would be discharged from his employment if he did not obey the orders of Fogg, would not justify him in running a risk which was known and appreciated, or ought to have been known and appreciated by him, having regard to his age, experience and capacity, and the circumstances surrounding the occasion.

"No. 13. The jury are also instructed that if they should find for the plaintiff, they may, in estimating his damages, take into consideration his physical and mental suffering arising from said injury, his loss of wages from the time that he was prevented by his injuries from working, and proper compensation for his being deprived by said injuries from following such calling or business as he would have followed but for said injuries."

To the action of the court in refusing the instructions asked for by the defendant, and giving others of its own, the defendant, by counsel, excepted.

There was a verdict and judgment for the plaintiff for the

sum of five thousand dollars, which the court refused to set aside. The verdict was rendered May 10, 1895. The defendant moved to set aside this verdict, "which motion the court continued until the next term of this court." No bill of exception was then taken, but at the next term, July 1, 1895, the court overruled the motion and rendered judgment on the verdict for the plaintiff, and thereupon the defendant excepted.

The opinion states the evidence.

*Christian & Christian* and *Cabell & Cabell*, for the plaintiff in error.

*Meredith & Cooke*, for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

Ford, the defendant in error, who was injured whilst employed by the Richmond Locomotive Works, instituted his action in the Circuit Court of the city of Richmond to recover damages therefor. A trial was had in that court but the jury failed to agree. Ford afterwards dismissed that case, and brought his action in the Law and Equity Court of that city, upon the same cause of action. A motion was made by the Locomotive Works in the last named court to have the cause removed to the Circuit Court where the first action was brought. This motion was overruled, and that action of the court is the first error assigned in the petition. In oral argument, however, that assignment of error was abandoned, and properly so in our opinion.

The next error assigned is to the action of the court in overruling the demurrer, which was to the whole declaration, and to each count thereof. The objection made to the first count is, that it does not show in what capacity the plaintiff was upon the premises of the Locomotive Works when injured, whether as trespasser, licensee, or employee.

· This question was considered in the case of *Jones* v. *Old Dominion Cotton Mill*, 82 Va. 140, 147-8, and such averment held to be unnecessary where the declaration distinctly sets forth (as is done in this case) when, where, in what manner, and under what circumstances the plaintiff was injured by the default, negligence, and improper conduct of the defendant's servants.

The objection made to the third count is that it alleges that the defendant was in fault in not furnishing to the plaintiff for the purpose of moving wheels certain implements then in the defendant's yard, and well known to it, but fails to state what those implements were.

There was no necessity for stating what they were. The only effect of stating that proper implements for moving the wheels were in defendant's yard was to limit the plaintiff's evidence to such implements. Neither did the court err in overruling the defendant's motion to require the plaintiff to file a bill of particulars under that count.

The demurrer to the whole declaration and to each count thereof was properly overruled.

The court permitted the plaintiff over the defendant's objection to prove the manner in which large driving wheels of locomotives were handled at the shops of the Chesapeake & Ohio Railway Company. In this the court erred. A witness having sufficient knowledge may testify as to the general practice of machine shops in moving such wheels, and the comparative safety of different methods, but it is not competent to show that the different method of another shop is better than that of the defendant. It is supposed that in such matters even the skillful and experienced will frequently differ in their choice of instrumentalities. A party should not be judged to be negligent for not conforming to some other method believed by some to be less perilous. 1 Baily on Personal Injuries, sec. 1744. The fact that the shops of the

Chesapeake & Ohio R. Co. were located near to those of the defendant cannot affect the question.

It is also assigned as error that Duffy, one of the witnesses of the plaintiff, was permitted to testify as an expert when it was not shown that he had such knowledge as entitled him to speak as such. It is not altogether clear that the witness had sufficient knowledge upon the subject to be considered an expert, but a trial court will not be reversed for allowing a witness to testify as an expert unless it appears clearly that he was not qualified, as the question of the qualification of the witness is largely in the discretion of the trial court. *Perkins* v. *Stickney*, 132 Mass. 217; 1 Greenleaf on Ev. (14th ed.), notes to sec. 440.

It was error in the court to allow the witness Gordon to testify that he quit the service of defendant the morning after the plaintiff was injured "because they would not move the tires so as to get room to move the wheels." This evidence was clearly inadmissible. The liability of the defendant was to be determined from what took place before and at the time of the accident. What the employees of the defendant did afterwards, and their reasons for such action, were irrelevant and immaterial.

The next assignment of error is to the action of the court in giving and refusing to give certain instructions.

The plaintiff asked for eight; the defendant for thirteen; and in lieu of those asked for by the parties the court gave thirteen instructions of its own, some of which, however, were the same as asked for. Whilst the instructions asked for and given are quite numerous, the questions of law involved in the case upon the merits are few.

One of these questions is whether Fogg, the leader or foreman of the gang of hands with which the plaintiff was working when injured, was the representative or vice-principal of the defendant, or whether he was a fellow-servant of the plaintiff.

It appears that the plaintiff, who was about nineteen years of age, was employed as one of a lot of hands known as the "laborers' gang," by the defendant, at its works, to do all the heavy moving and lifting in its shops. At the time of the accident in question a portion of this gang was engaged in moving heavy locomotive wheels (which had been placed or piled on edge near one of the doors of the shops), in order to get at certain wheels taken off of a locomotive then in the shops for repair, and which were needed to put back upon it. For the purpose of getting to these wheels, the gang of hands moved back the first wheel in the pile a short distance, put a piece of timber through its eye or bore, and rested it upon another piece of timber. They then removed another, or perhaps two other wheels and set them up against the first wheel, and were moving another wheel when it escaped from their control, and fell against the wheels which had been removed and had in the mean time fallen, the support under them having given away. When it struck those wheels it slid or slipped on the floor on which they were piled, and caught the plaintiff's leg, and caused the injury complained of. Fogg was the boss or leader of the gang. He received his instructions from the foreman of the machine shop and directed the gang in its work, and worked with them himself, though there is some conflict in the testimony as to the extent and character of the work done by him. He had no power to employ or discharge members of the gang. If they refused to do what he directed he reported the fact to the foreman of the shops, who exercised that power.

The ground upon which it is insisted that Fogg and the plaintiff were not fellow-servants is that Fogg occupied a higher position, was in charge and control of the plaintiff, and ordered him to do the work alleged to have been dangerous. Conceding that the leader or boss of the gang of hands occupies a higher position than the other members of the gang, and that he had control of and power to direct, and

did direct, the gang in their work. which had been directed to be done by the foreman of the machine shops, it is clear that he was a fellow servant with the other members of the gang.   The mere fact that one servant is superior in authority to another does not have the effect of changing his relation of fellow-servant, unless his superiority places him in the category of vice-principal.   This is one of the propositions announced in the case of the *N. & W. R. R. Co.* v. *Nuckol's Adm'r*, 91 Va. 193, a late case, in which the question of the master's duty and liability was carefully considered.

Fogg and his gang of hands, fifteen or sixteen in number, were under the control and direction of the foreman of the machine shops, and did such work as he directed done. Where the execution of work directed to be done by the master or his representative is entrusted to a gang or group of hands, it is necessary that one of them should be selected as the leader, boss, or foreman, to see to the execution of such work.   "This sort of superiority of service," as has been said. "is so essential and so universal that every workman, in entering upon a contract of service, must contemplate its being made in a proper case.   He, therefore, makes his contract of service in contemplation of the risk of injury from the negligence of a boss or foreman, as well as from the negligence of another fellow-workman.   The foreman or superior servant stands to him in that respect in the precise position of his other fellow-servants."   *O'Brien* v. *Am. Dredging Co.*, 53 N. J. L., 291; *Central R. R. Co.* v. *Keegan*, 160 U. S. 259; *North. Pac. R. R. Co.* v. *Peterson*, 162 U. S. 346.

But it is said that, if he was not the representative of the defendant in executing the work his gang were required to perform, he was its representative in the matter of furnishing and maintaining a safe place in which they were to work. The rule is well settled that it is the duty of the master to furnish and maintain a reasonably safe place in which his ser-

vants are required to work; that this duty is personal to him and is one of the duties imposed upon him in the exercise of ordinary care for the protection and safety of his servants. 2 Baily on Personal Injury, sec. 2895; *N. & W. R. R. Co.* v. *Nuckol's Adm'r*, 91 Va. 193; *Bertha Zinc Co.* v. *Martin's Adm'r*, 93 Va. 791; *N. & W. R. R. Co.* v. *Ampey*, 93 Va. .108.

If the defendant failed to furnish them a safe place in which to work, in the first instance, or having furnished them such a place, and it afterwards became unsafe, and the defendant knew, or ought to have known, of its unsafe condition, and failed to remedy it within a reasonable time, and the plaintiff was injured in consequence thereof, whilst exercising ordinary care in the performance of his work, the defendant would be liable therefor. But if the premises were in a reasonably safe condition when Fogg directed the wheels to be removed, and were rendered unsafe, as is contended, by the negligent manner in which he directed it to be done, the defendant is not responsible for such negligent act. The manner of performing each of the various details by which the wheels were to be gotten out and taken where they were needed, rested necessarily upon the intelligence, care, and fidelity of the servants to whom that duty was entrusted. If, in performance of it, the plaintiff was injured by reason of the negligent act of a fellow servant, although that fellow servant was the foreman or leader of his gang, it was one of the risks which he had assumed. *Cuelen* v. *Norton*, 126 N. Y. 1; 2 Baily on Personal Injury, sec. 2993, &c.; *Connors* v. *Hildon*, 152 Mass. 598; *Queke Steamship Co.* v. *Merchant*, 133 U. S. 375.

The instructions given by the court upon the theory that Fogg was in any view of the case the vice-principal or representative of the defendant were erroneous.

The ninth instruction is objected to as erroneous and misleading, first, because whatever danger there was in handling

a locomotive wheel was obvious, and there was no duty on the part of the defendant to warn the plaintiff of risks that were obvious to one of his age and experience. It is the duty of the master to inform an inexperienced servant of dangers ordinarily incident to the service, and if he fails to do so, and the servant has no opportunity to learn of them, he will not be held to assume risks not obvious to one of his age, experience, and judgment. 2 Baily on Personal Injuries, sec. 2665. But this rule only applies where there is a danger known, or which ought to be known, to the master, of which the servant, on account of his youth or inexperience, is ignorant, and which he cannot reasonably be expected to discover by the exercise of ordinary care. *Rooney* v. *Sewall, &c.,* 161 Mass. 153; *Stuart* v. *West End Ry. Co.*, 163 Mass. 391, cited by Baily, sec. 2702.

The plaintiff had been working in this gang of laborers for about two and one-half months. The evidence showed that he had seen these very wheels rolled to the place where they were, and had used a crane in hoisting them upon edge when they were rolled there; that one of them had fallen and came near injuring the men who were handling it; that he had been informed of this occurrence before he was injured, and was present when members of the gang were discussing the danger of handling these very wheels by hand. He testifies himself that members of the gang said it was dangerous to move the wheels by hand, and that he thought so, too. Even if it had been the defendant's duty, in the first instance, to have warned him of the danger of moving such wheels by hand, having received such warning or knowledge from other sources, he was not prejudiced by its failure to perform its duty, and could not rely upon it as a ground of recovery for the injuries received by him. This instruction given upon this point was therefore erroneous.

Another objection to the instructions is that the court erred in leaving it to the jury to say whether the defendant was

negligent in not instructing how such wheels could be handled so as to avoid danger, as it was not shown in evidence that any such method was either known to the defendant, or generally known or practiced in moving such wheels. The only evidence introduced as to a different method of moving such wheels was that of Duffy, who testified as to the practice of the Chesapeake & Ohio Rwy., in its shops. This evidence, as we have seen, was not admissible, and there was therefore no evidence upon which to base so much of the instruction as submitted the question to the jury, whether the danger of handling them might have been removed by putting a piece of timber through the hub of the wheel.

Another question upon which the court gave instructions was as to the circumstances under which a plaintiff may recover for injuries done him after he has learned of the dangerous or defective condition of the premises or appliances, and continues in the service. Since this case was tried in the Law and Equity Court this question was carefully considered and passed upon in the case of the *N. & W. R. R. Co.* v. *Ampey*, cited above. There is nothing in this case rendering a further discussion of that question necessary. We will content ourselves, therefore, by referring to the opinion of the court in that case for the principles which should guide the court of Law and Equity on that question upon the next trial.

It is also assigned as error that the verdict is contrary to the law and the evidence, but as a new trial will have to be ordered for the reasons already stated, it is unnecessary to consider that assignment of error.

The judgment of the trial court must be reversed, the verdict set aside, and a new trial ordered.

*Reversed.*