# Richmond.

LANE BROS. & CO. v. BAUSERMAN.

November 23, 1904.

1. PROCESS—*Defects—Motion to Quash—Waiver.*—A motion to quash a summons based upon a ground which is in bar of the action is a waiver of all defects in the summons and the return thereon.

2. PROCESS—*Defects—Motion to Quash—Waiver.*—If process be illegally issued or executed, the validity of such process or return may be raised by a motion to quash, as well as a plea in abatement, but if such motion be not made and disposed of before appearing to the action, or before taking or assenting to a continuance, the party is taken to have waived all defects in the process, and the return thereon.

3. LIMITATION OF ACTIONS—*Motion to Quash Process.*—Whether or not a plaintiff's remedy for a negligent injury is barred by statute of limitations cannot be raised by a motion to quash the process in the case.

4. APPEAL AND ERROR—*Demurrer—Grounds Not Copied in Record.*—Where the grounds of demurrer in an action at law have been stated in writing, in accordance with the statute, but they are not copied into the record, this court will treat the case as if there had been no demurrer.

5. MASTER AND SERVANT—*Safe Place—Vice-Principal—Admissions.*—Ordinarily the foreman or boss of a gang of hands employed in executing the master's orders is a mere fellow servant with the other members of the gang, but if he is discharging a non-assignable duty of the master, he is to that extent a vice-principal. One of these non-assignable duties is to exercise ordinary care to provide a reasonably safe place in which the servant is to work. If the place was originally safe, but has become unsafe during the absence of the servant, and he is ignorant of this fact, and cannot discover it by the exercise of ordinary care, it is the duty of the

master to inform him of it, and, in his absence, this duty devolves upon the foreman of the gang as a vice-principal, and his statements, made in the presence of the servant, as to the condition of the premises, are admissible as evidence in an action by the servant against the master for injuries resulting from such unsafe condition.

6. MASTER AND SERVANT—*Vice-Principal—Knowledge of Danger—Evidence.*—Evidence is admissible which tends to show that a vice-principal had knowledge of the dangerous condition of premises in which he puts hands to work. In the case at bar, the boss of a gang of hands engaged in quarrying stone was held to be a vice-principal while discharging certain duties, and evidence of the refusal of some of the hands to assist in cleaning out a hole that had been loaded but the charge in which had not exploded, was received to show that the boss had knowledge of the condition of the hole when he directed it to be cleaned.

7. MASTER AND SERVANT—*Dangerous Place—Warning—Evidence.*—In an action by a servant to recover for injuries inflicted while cleaning out a "loaded" hole in a stone, which he alleges he did not know was "loaded," evidence of the absence of any placard or other device to show that the hole was "loaded" is receivable, if not to show negligence of the master, to rebut the idea of contributory negligence on the part of the servant in working in the hole in the face of such danger signal.

8. EVIDENCE—*Experts—Qualification—Discretion of Trial Court.*—The question of the qualification of a witness to speak as an expert, lies largely in the discretion of the trial court, whose judgment will not be reversed unless it clearly appears that the witness was not qualified.

9. EVIDENCE—*Leading Questions.*—Generally, it cannot be assigned as error that leading questions were asked on the trial, as the circumstances under which such questions may be asked is a matter in the discretion of the trial court.

10. APPEAL AND ERROR—*Expert Evidence—Harmless Error.*—A judgment will not be reversed simply because an expert has been improperly allowed to give his opinion upon a matter of common knowledge. It is harmless error.

11. MASTER AND SERVANT—*Incompetent Servants—Evidence.*—Where the declaration alleges that the plaintiff was one of the "Steel gang" and charges that his injuries were inflicted by reason of the negligence, incompetency and want of skill of the defendants, their agents and employees, and that the defendants' foreman was without ordinary competency and skill for the performance of his

duties, it is error to refuse to permit the foreman, when examined as a witness on the trial, to answer the question: "Did you assign to the Steel gang any but experienced men?"

12. MASTER AND SERVANT—*Unsafe Place—Evidence.*—In an action by a servant to recover for injuries alleged to have been inflicted in consequence of being put at an unsafe place to work, the defendant should be permitted to show that the place was originally safe, but was rendered unsafe by the plaintiff's actions and conduct.

13. TRIAL—*Instructions—Reading in · Concluding Argument.*—A correct instruction given by the court, but not previously read to the jury, may be read to them by plaintiff's counsel during the closing argument. If defendant's counsel has been misled by what has occurred with reference to the instruction, he should ask to be further heard on the subject. He cannot object to its being read to the jury.

Error to a judgment of the Circuit Court of Shenandoah county, in an action of trespass on the case, wherein the defendant in error was the plaintiff, and the plaintiffs in error were the defendants.

*Reversed.*

The opinion states the case.

*M. L. Walton* and *Downing & Richards*, for the plaintiffs in error.

*R. T. Barton* and *Tavenner & Bauserman*, for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

John W. Bauserman instituted his action of trespass on the case against John E. Lane and others, doing business as partners under the firm name of Lane Brothers & Co., to recover damages for personal injuries suffered by him while working in the defendants' rock quarry, and alleged to have been caused by their negligence.

Upon the calling of the cause, the defendants appeared and moved the court to quash the writ or summons. This motion was overruled and the defendants excepted. This action of the court is assigned as error.

The bill of exception states that the grounds of the motion were, because the summons and return thereon were not in accordance with law, and that more than one year had elapsed between the time the plaintiff was injured and the institution of the action. One of the grounds of the motion to quash was in bar of the action, being in effect a plea of the statute of limitations, and was therefore a waiver of all defects in the process and return thereon.

It is well settled that if process be illegally issued, or executed, the validity of such process or return can be raised by a motion to quash, as well as by a plea in abatement. See *Garrard* v. *Henry*, 6 Rand. 112, 116; *Pulliam* v. *Aler*, 15 Gratt. 54, 62; *Warren* v. *Saunders*, 27 Gratt. 259, 268; *Raub* v. *Otterback*, 89 Va. 645-648-9, 16 S. E. 933; *N. & W. Ry. Co.* v. *Carter*, 91 Va. 587, 22 S. E. 517; 1 Rob. Pr. (old Ed.) 162; 4 Min. Inst. (1st Ed.) 532. But if such motion be not made and disposed of before appearing to the action, or before taking or consenting to a continuance, the party is held to have waived all defects in the process and service thereof. *Wynn* v. *Wyatt*, 11 Leigh, 584, 590-5; *Pulliam* v. *Aler, supra; Harvey* v. *Skipwith*, 16 Gratt. 410, 414; *Petty* v. *Frick*, 86 Va. 501, 503, 10 S. E. 886; *New River Min. Co.* v. *Painter*, 100 Va. 507, 42 S. E. 300.

Even if the action had been barred by the statute of limitations, that question could not be raised by a motion to quash the process. The motion to quash was, therefore, properly overruled.

The defendants demurred to the declaration and each count thereof. The demurrer was overruled, and this action of the court is assigned as error.

The grounds of the demurrer were set forth in writing and filed, as required by counsel and the court, but that paper is not copied into the record, and it does not appear what the grounds of demurrer were.

Section 3271 of the Code, as amended by an Act of Assembly, approved January 22, 1900 (Acts 1899-1900, p. 111), provides, among other things, "that all demurrers shall be in writing, except in criminal cases, and in civil cases the court, on motion of any party thereto, shall, or of its own motion may, require the grounds of demurrer relied on to be stated specifically in the demurrer, and no grounds shall be considered other than those so stated; but either party may amend his demurrer by stating additional grounds, or otherwise, at any time before the trial."

Since the trial court could not consider any ground of demurrer other than those stated specifically, and as they are not copied into the record, this court will treat the case as if there had been no demurrer; otherwise, it might reverse the trial court upon a ground of demurrer not stated specifically before the trial court, and which that court had no right to consider under section 3271 of the Code, as amended.

It may not be amiss to say that the amendment to section 3271 is an eminently wise one, and if taken advantage of by the trial courts will do away with the practice of assigning one ground of demurrer in the trial court and relying upon a wholly different ground in the appellate court—a practice which frequently results in the reversal of trial courts upon questions never presented to or considered by them.

Upon the trial of the cause, Bott, one of the plaintiff's witnesses, was asked, "Just state how the accident occurred," and answered, "I says to Mr. Fisher . . . 'Joe, has that hole gone off?' and Mr. Fisher says, 'Yes, sir,' and walked up to the hole and pulled the wire out." The defendants objected to

both question and answer. The court overruled the objection, and this action of the court is assigned as error.

Bott was an eye-witness to the accident, and there was no valid objection to asking him how it occurred. The objection made to the answer is that Fisher's assurances of safety, or his declarations, were not binding on the defendants. Fisher was the foreman in charge of the men known as the "steel gang." His duties were to work along with his men, and to look after them, and when the superintendent was not there (and he was not at the time of the accident) to direct them. In order to understand the objection made to Fisher's answer, it will be necessary to state briefly some of the facts of the case, which the evidence tended to prove.

The defendants' rock quarry was located on a very steep hillside, where the stones lay in ledges of different depths, and were gotten out for dimension or building purposes exclusively. The manner of getting them out was by drilling holes with steam or hand drills, to put a small load or charge of powder in each hole, tamp clay upon the powder, connect a wire with an exploder attached pressed down to the powder, then attach the wires, positive and negative, so as to make a complete circuit, to an electric battery, by which the blasts were set off. The effect of which was to spring the stone and open fissures between the layers. Sometimes, when it was desired to remove more than one layer of stone, an additional charge of powder was placed in the hole corresponding to the layers and prepared for explosion by the electric battery in the same manner as above described. Eight or ten days before the accident, some twenty or more holes had been drilled, all about 8 feet deep, and loaded. Three of these holes near together had been loaded with two charges in each. When the electricity was applied, the loads in the other holes and five of the six loads in the three holes exploded, leaving one unexploded in the middle hole.

The three holes were again loaded, one charge in the middle' hole and two in each of the others, and the electricity applied, but the bottom load in the middle hole again failed to explode. For eight or nine days water was poured into that hole to wet the powder, and during that time it rained on the hole. The water disappeared. After waiting this period for the water to do away with the danger of the powder exploding, Fisher, the foreman, who had charge of this work, directed three members of the steel gang, the plaintiff being one of them, to clean out the middle hole. While engaged in drilling out the tamping in that hole with a hand churn drill, the undischarged load or charge of powder exploded, injuring the plaintiff and the other two employees engaged in unloading the hole. The plaintiff, who had been working in the quarry most of the time since the August before, testified that until two or three days before the accident he had been absent for a week or more, working his crops at home, was not present when the hole was loaded, knew nothing of the history of that blast, nor the condition of the hole when he was directed to aid in cleaning it out; that after he was so directed he saw Fisher pull a wire out of the hole and heard Bott ask him "if it was all right, and he said, Yes, sir; go ahead, or something to that effect," and that they then commenced to drill out the hole with a churn drill, using water and getting the dirt out with a swab, and while so engaged the accident occurred.

Ordinarily, where the work directed to be done by the master or his representative is entrusted to a gang or group of hands, and one of them is selected as foreman or boss to see to the execution of the work, such foreman or boss is a mere fellow-servant with the other members of the gang. *Richmond Locomotive Works* v. *Ford*, 94 Va. 627, 642-3, 27 S. E. 509; *Russell, &c. Coal Co.* v. *Wells*, 96 Va. 416, 422, 31 S. E. 614. But if his work relates to duties which are not assignable by the mas-

ter, then to that extent he may be a vice-principal. One of the non-assignable duties of the master is to exercise ordinary care to furnish a reasonably safe place in which his employees are to work.

In this case there is no claim that the quarry in which the plaintiff had been working up to some ten days before the accident, was not in a reasonably safe condition, considering the dangerous character of the work; but it is insisted that between the time the plaintiff had quit work and gone home, and the time of his return, the place at which he was directed to work, and was working when injured, had been rendered unsafe by what had been done during his absence, which dangerous condition he did not know, and could not have discovered by ordinary care. If this state of facts existed, and there was evidence tending to show that it did, it was the duty of the defendants to inform the plaintiff of the condition of the hole so far as they knew it when he was put to work on it. And as neither the defendants nor their superintendent were present, and Fisher was directing the work, he must be regarded as the representative of the defendants, in seeing that the plaintiff, if he was really ignorant of the danger, without fault on his part, was informed of the condition of the hole so far as the defendants knew or in the exercise of ordinary care ought to have known it. This being so, the statement of Fisher in the presence of the plaintiff, as to the condition of the hole, was admissible in evidence.

Assignments of error based upon bills of exception numbered 3, 4 and 5, may be considered together. The answers of certain witnesses were permitted to go to the jury over the defendant's objection, for the purpose of showing Fisher's knowledge of the dangerous condition of the hole, when he directed the plaintiff with others to clean it out, and for that purpose only. The answers in question showed that the witnesses re-

fused to work at the hole when Fisher directed them to do so, because they regarded it as dangerous, and so informed Fisher. The evidence objected to tended to show that Fisher had knowledge of the condition of the hole when he directed it to be cleaned, and so limited was properly admitted.

The plaintiff, when examined as a witness, was asked over the defendants' objection, "What was the appearance of the hole and rock when you were sent up there to work at it?" To which inquiry he replied, "I saw Mr. Fisher pull out a wire and I heard Mr. Bott ask him if it was all right, and he said yes, or something to that effect." The action of the court in permitting that answer to go to the jury is assigned as error.

·The evidence was admissible for the reasons stated in disposing of the assignment of error based upon the second bill of exceptions.

Jenkins, one of the plaintiff's witnesses, was asked, "Was there any device of any sort, any placard or anything stuck in the hole, to show that it was loaded?" To which inquiry he answered, "No, sir." This evidence was admissible, if not to show negligence on the part of the defendant in failing to give warning of the condition of the hole, at least to rebut the idea that the plaintiff was guilty of contributory negligence in working at the hole in the face of such a danger signal.

The assignments of error based upon bills of exception numbered 8 and 9, may be considered together, as they both relate to the action of the court in permitting certain witnesses to testify as experts. The objection made to their evidence is that it was not shown that they had such knowledge as entitled them to testify as experts upon the subject upon which they were examined.

It appeared that the witnesses in question had been engaged in stone quarries, drilling holes and blasting, for many years— one for sixteen or seventeen years, and the other for twelve or

fifteen years, and that they had considerable experience in unloading unexploded blasts, and knew the proper method of doing that work, though neither claimed to know what was the method in general use. The question of their qualification to speak as experts was largely in the discretion of the trial court, and it will not be reversed for allowing witnesses to testify as experts, unless it clearly appears, as it does not in this case, that they were not qualified. *Richmond Locomotive Works* v. *Ford, supra.*

The case cited above is relied on by the defendants to sustain their contention, but in that case the trial court permitted the plaintiff to prove, not as in this case, the proper manner of doing the work in question, but how the work was done in a particular shop.

One of the plaintiff's witnesses was asked, "Is it safe and proper for a man to drill out a hole who does not know that a load was in it?" To which he answered, "No." This question and answer were objected to upon the ground that the question was leading and that it sought the opinion of the witness upon a subject upon which expert evidence was not competent.

The question is leading, but as a general rule such questions cannot be assigned as error, since the circumstances under which they may be asked is in the discretion of the trial court. *Richmond, &c. Elec. Ry. Co.* v. *Rubin,* 102 Va. 809, 47 S. E. Rep. 834, 837. The question did seek the opinion of the witness upon a matter upon which expert evidence was not admissible, and was therefore improper; but no injury could have resulted to the defendants from the answer, since it is a matter of common knowledge that it is not safe for any one to drill out a hole loaded with powder when ignorant of the fact that it is so loaded.

The assignments of error based upon bills of exception, numbered 11 and 12, are to the refusal of the court to permit the

superintendent of defendants' quarry to answer the following questions: "Did you assign to the steel gang any but experienced men?" and "What was your rule in selecting men for that steel gang?" The court properly refused to allow the last question to be answered.

The first count in the declaration charges that plaintiff's injuries were caused by reason of the carelessness, negligence, incompetency and want of skill on the part of the defendants, their agents and employees, who had charge of the quarry and works of the defendant. The second count charges that Fisher, the boss and foreman of the steel gang, was "without ordinary competency, care, prudence and skill in and for the performance of the duty required of him," &c. The defendants had the right to introduce evidence to meet these charges, and the answer to the first question which the bills of exception state the witness would have made, would have tended to show that none but experienced men were selected for the steel gang. The court erred, we think, in not permitting that question to be answered.

The question raised by the thirteenth bill of exception was the correctness of the court's action in refusing to permit the superintendent of defendants' quarry to answer the following question, to-wit: "Tell us what was the condition of the quarry on the day of the accident." The bill of exception states that it was intended to prove by him that the place assigned the plaintiff was a safe place when he was first assigned there, and that he made it unsafe by his own actions and conduct. This was relevant evidence and ought to have been admitted.

The plaintiff asked for six instructions to the jury, and the defendants for thirteen. The court gave all of plaintiff's instructions, ten of the defendants', as asked, one as modified by the court, and refused to give the other two. The action of the court in giving the plaintiff's instructions, in modifying one and

in refusing to give two of the defendants' instructions, is assigned as error.

Without attempting any discussion of the many objections made to the court's action, it is sufficient to say that after a careful consideration we think the jury were fully instructed upon the questions they had to pass upon, and that we see no error in the court's action in giving, modifying or refusing instructions to the prejudice of the defendants.

After the court had instructed the jury as above stated, and during the opening argument of the defendants' counsel, a controversy arose between counsel as to the burden of proof of contributory negligence. Thereupon the plaintiff's counsel tendered an instruction on that subject, which the court modified and gave, but did not read it to the jury, as the court thought all the counsel knew the instruction had been given. The instruction was read to the jury in the closing argument of plaintiff's counsel, to which the defendants objected, but the court overruled the objection; and this action of the court is assigned as error.

There is no pretense that the instruction, as modified and given, was erroneous. The plaintiff's counsel had the right to read it in his closing argument. If the defendants' counsel had been misled by what had occurred in reference to the instruction, their remedy was to ask the court to allow them to be further heard upon that subject, and not by objecting to what plaintiff's counsel plainly had the right to do.

The remaining assignment of error is to the refusal of the court to set aside the verdict, because contrary to the law and the evidence, and grant a new trial.

As the judgment of the court will have to be reversed for the errors above indicated and a new trial granted, it is unnecessary to consider that assignment of error.

*Reversed.*