## Richmond.

### Reid and Others v. Medley's Administrator.

January 13, 1916.

Absent, Cardwell, J.

1. INSTRUCTIONS—*Multiplication.*—The giving of a number of unnecessary instructions tends to confuse and mislead the jury, and the practice should be abandoned.

2. MASTER AND SERVANT—*Injury to Servant—Boss of Gang—Superior Authority.*—The ordinary boss or foreman of a gang of hands with whom he works, who has no power to employ or discharge members of the gang, is a fellow servant of the members of the gang. His superiority in authority does not change his relations to the gang, unless his superiority places him in the position of principal or vice principal.

3. MASTER AND SERVANT—*Injury to Servant—Boss of Gang—Nonassignable Duty—Character of Act.*—In the absence of a statutory enactment, the master's liability for the negligent act of one servant against another is determined solely by the question whether the act of negligent servant was in the performance of a duty imposed by the common law upon the master towards the injured servant, and not whether the negligent servant has been placed by the master in a position of higher grade or in authority and control over the injured servant. If a foreman was not in the performance of a nonassignable duty, he is still a fellow-servant of the injured servant, and such fellow service is a bar to a recovery by the injured servant.

4. MASTER AND SERVANT—*Injury to Servant—Safe Place—Change in Conditions.*—If a place is reasonably safe in the first instance, but the conditions are such in regard to safety that they are constantly changing, and the place is afterwards rendered unsafe by the negligent manner in which the boss or foreman of a gang directs the work to be done, in doing which an injury is inflicted on another servant, the master is not liable for such injury. The master is not required to keep a constant watch over his servant and warn him of common dangers that may arise in the course of his employment, and where the servant already possesses sufficient knowledge of conditions to enable him to take appropriate precautions for his own

safety, the master cannot be deemed culpable on the ground of an omission to give warning. Such dangers are risks incident to the employment.

5. MASTER AND SERVANT—*Injury to Servant—Infant Servant—When Capacity Presumed—Burden of Proof.*—An infant over the age of fourteen years is presumed to have the capacity to understand and be sensible of danger, and this presumption continues until overthrown by clear proof of the absence of such discretion as is usual with infants of that age, and where the size and appearance of the infant are such as to indicate that he was a full grown man, the burden is upon the plaintiff not only to show that he was incapable of understanding and appreciating the danger, if such defense is relied upon, but also that such incapacity was known or should have been known by the master.

6. MASTER AND SERVANT — *Death of Servant — Negligence of Beneficiaries.*—When an action for the death of an infant is brought by the parent and for the latter's benefit, the contributory negligence of the parent may be shown in bar of the action. This rule is founded upon the principle that no man can acquire a right of action by his own negligence.

7. EVIDENCE—*Experts—Discretion of Trial Court.*—The admissibility of expert evidence is largely a matter in the discretion of the trial court, and its ruling allowing a witness to so testify will not be reversed unless it clearly appears that he was not qualified.

Error to a judgment of the Circuit Court of Roanoke county in an action of trespass on the case. Judgment for the plaintiff. Defendants assign error.

*Reversed.*

The opinion states the case.

*Welborn & Jamison,* for the plaintiffs in error.

*Kime, Fox & McNulty,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This suit was brought by W. L. Medley, as administrator of his deceased infant son, to recover of the defendants damages for the death of the deceased, which he alleged was caused by their negligence. There was a verdict and judgment in favor of the plaintiff for $1,000, which we are asked to review.

It appears that the deceased was engaged with other employees in the work of raising a frame house belonging to the defendant, Reid, and that during the progress of the work the house suddenly careened and fell, catching the deceased under one edge of the building, inflicting injuries from which he died.

The record brings up some thirty instructions which were given and refused, to be passed on by this court. The issues in the case were narrow and could have been properly submitted to the jury under a few pertinent instructions. The mass of instructions given and refused were, for the most part, wholly unnecessary, and the large number given were well calculated to confuse and mislead the jury. This court has so often condemned this practice of giving to the jury an unnecessary number of instructions that we will not do more than advert to the subject at this time. We will only notice such of the instructions as seem necessary properly to dispose of the case.

By instruction No. 1, given for the plaintiff, the jury were told that if E. S. Phelps was employed by the defendant, Reid, as foreman in charge of the work of raising the defendant's house, and that the method employed in doing the work was not such as a reasonably prudent man would adopt for the purpose, and that the deceased was directed by Phelps, while acting as foreman, to go under the house, and that the building fell and killed him, without fault on his part, by reason of such inadequate method of doing the work, that then the defendants were guilty of negligence and the jury should assess to the plaintiff damages, etc.

On the morning of the accident five men, including the owner, were engaged upon the work of raising this house. Assuming that Phelps was acting as foreman, it by no means follows that because he directed the deceased to go under the house that the owner was thereby made liable for the death of the plaintiff's intestate. These men were each employed by the defendant, Reid, who was having the work done, and there is no evidence that Phelps had any authority to employ or dis-

charge one of them. The ordinary boss or foreman of a gang of hands with whom he works, who has no power to employ or discharge members of the gang, is a fellow servant with the other members of the gang. His superiority in authority does not change his relation to the gang. *Richmond Locomotive Works* v. *Ford,* 94 Va. 627, 27 S. E. 509.

The mere fact that one servant is superior in authority to another does not have the effect of changing his relation of follow servant, unless his superiority places him in the position of principal or vice-principal. *N. & W. R. Co.* v. *Nuckols, Admr.,* 91 Va. 193, 21 S. E. 342.

The vice of this instruction is that it puts Phelps in the category of a vice principal performing a nonassignable duty. It is clear that he was a fellow servant of the men with whom he was working in raising the house, and, therefore, that any injury resulting to the deceased because of his negligence was due to the negligence of a fellow servant, and the injured servant could not recover.

The defendant's instruction No. 20, which was refused, told the jury that in the absence of a statutory enactment the master's liability for the negligent act of one servant against another was determined solely by the question whether the act of the negligent servant was in the performance of a duty imposed by the common law upon the master towards the injured servant, and not whether the negligent servant has been placed, by the master, in a position of higher grade, or in authority and control over the injured servant. Therefore, although the jury may believe that E. S. Phelps was employed as a foreman, yet if he was not in the performance of a nonassignable duty, he was still a fellow servant of Elmer K. Medley, and such fellow service is a bar to a recovery, and you should find for the defendants.

It follows from what has been already said with respect to plaintiff's instruction No. 1 that the court erred in refusing this instruction. It correctly states the law applicable to the

facts of the case and should have been given. *Norfolk & W. R. Co.* v. *Houchens' Admr.*, 95 Va. 398, 28 S. E. 578, 46 L. R. A. 359, 64 Am. St. Rep. 791.

The plaintiff's instruction No. 2 tells the jury that if they believe from the evidence that the defendants did not exercise ordinary care to provide a reasonably safe place in which the deceased was to work, and that he was ignorant of the fact and could not by the exercise of ordinary care have discovered the danger, it was the duty of both the owner and the foreman to inform him of the danger, and if they believe from the evidence that Phelps was present and ordered the deceased to work in such place without informing him of the danger, and as a result thereof the plaintiff's intestate was killed, without fault on his part, then the defendants were liable.

There is the same objection to this instruction that there was to the plaintiff's first instruction. It tells the jury that all that was necessary to fix upon Reid, the owner, liability for failure to warn the deceased of dangers, was that the jury should believe that E. S. Phelps was present and acting as foreman directing the job. We have already seen that Phelps was a fellow servant of the deceased and that no negligence, therefore, of his could fix any liability upon the owner of the building for the death of the plaintiff's intestate. The instruction under consideration is, we think, further defective because it is not applicable to the facts of the case. There is no evidence that the owner of the building had failed to provide a reasonably safe place. The place where the work was to be done was unquestionably safe in the first instance, and the conditions as to safety consisted in the character of the work itself, which was necessarily changing as the work progressed. With these changing conditions plaintiff's intestate was acquainted, having assisted in bringing them about. The master is not required to follow up his servants every moment to see that they keep their place of work in a safe condition. The master owes the servant no greater duty in this respect than the servant owes himself.

*Black* v. *Portland Cement Co.,* 104 Va. 450, 51 S. E. 831. This exception to the rule requiring the master to exercise ordinary care to provide a reasonably safe place for his servants to work has been repeatedly recognized by this court; the exception arising when the servant is engaged in work of such a nature that the conditions of the place of work, in regard to safety, are constantly changing. *Coal Co.* v. *Wells,* 96 Va. 416, 31 S. E. 614; *Locomotive Works* v. *Ford, supra.*

In the case last cited it is held "to be the duty of the master to furnish and maintain a reasonably safe place in which the servant is to work, and this duty is personal to the master, but if the place is reasonably safe in the first instance, and is afterwards rendered unsafe by the negligent manner in which the boss or foreman of a gang of hands directs the work to be done, in doing which an injury is inflicted, the master is not liable for such injury."

"Both upon principle and authority it is clear that a master cannot be deemed culpable on the ground of an omission to give warning, where the servant already possesses sufficient knowledge of the conditions to enable him to take appropriate precautions for safeguarding himself. Accordingly, a master 'is not required to keep special watch over his employee and warn him of common dangers to which he may be subjected in the performance of his ordinary duties.' The reluctance of the courts to allow a servant to recover for an injury due to such a danger is especially strong in cases where the isolated event which caused the injury occurred during the work of constructing or repairing a part of the master's plant." 3 Labatt (2d Ed.), sec. 1113.

This court in *Fields* v. *Virginian Railway Co.,* 114 Va. 558, 77 S. E. 501, says: "The law does not make it the duty of a master to warn a servant of an open and obvious danger of which he knows, or could have known by the exercise of ordinary care. Such dangers are risks incident to the employment."

By instruction No. 3, given for the plaintiff, the jury were told that the degree or amount of care imposed upon a master was commensurate with the youth, inexperience and lack of capacity of the servant. This instruction was not sufficiently full to submit the subject dealt with fairly to the jury. On the same phase of the case the defendants asked for the following instruction, which was refused: "The court instructs the jury that an infant over the age of fourteen years is presumed to have the capacity to understand and be sensible of danger, and that if the plaintiff in this case relies on the incapacity of the deceased to understand and appreciate the danger of the work in which he was engaged, the burden is on the plaintiff to prove such incapacity by a preponderance of the evidence, sufficient to satisfy the minds of the jury, and the plaintiff must further prove, by a preponderance of the evidence, not only that Elmer K. Medley, the deceased, was incapable of understanding and appreciating the danger, but also that such incapacity was known or should have been known by the defendants, and if the size and appearance of said Elmer K. Medley was such as to indicate that he was a full grown man, then the defendants would not be charged with constructive notice of such incapacity, and actual notice of the same must be shown to have been given to said defendants." This instruction is supported by the evidence, correctly states the law applicable to this phase of the case, and therefore should have been given. The evidence shows that the plaintiff's intestate was a well grown, vigorous young man, seventeen years of age and weighing 162 pounds, who had been working around and about buildings for some two years. "An infant more than fourteen years old is presumed to have sufficient capacity to be sensible of danger and have the power to avoid it, and this presumption will stand until overthrown by clear proof of the absence of such discretion as is usual with infants of that age." 3 Labatt, sec. 1156. We have found no evidence in the record to overthrow or rebut

the presumption that the deceased was sufficiently developed, both mentally and physically, to be capable of understanding and appreciating the dangers incident to his employment.

The defendants asked for an instruction, which was refused, based upon the theory that when an action for the negligent injury of an infant is brought by the parent, for the parent's own benefit, that the contributory negligence of such parent may be shown in bar of the action. The evidence tends to show that W. L. Medley, the father of deceased, was present at the time of the accident and was engaged in the work, directing the manner in which it was done, and that he knew, or by the exercise of reasonable care ought to have known of the danger incident to the manner in which the house was being raised, stayed and shored. And yet he stood by in silence and allowed his son to go into a position of danger.

The rule that the negligent father cannot recover is founded upon the fundamental principle that no one can acquire a right of action by his own negligence. The principle involves a maxim as old as the common law itself. *R., F. & P. R. R. Co. v. Martin's Admr.,* 102 Va. 201, 45 S. E. 894. In the case cited this subject is elaborately discussed and numerous authorities cited which need not be here set out, they being practically unanimous to the effect that the negligence of a parent of a minor is a bar to an action by him to recover damages for an injury to such minor. The policy of the law is not to allow a recovery for the benefit of a wrongdoer. It is clear, upon principle and authority, that the court erred in refusing to give the instruction referred to.

We are of opinion that the objection taken by the defendants to the admission of certain expert testimony was without merit. This evidence consisted of the answers of three expert witnesses to a hypothetical question as to the propriety of the method employed by the defendants in raising the house. The admissibility of expert evidence is largely a matter in the discretion of the trial court and its ruling allowing a witness to so

testify will not be reversed unless it clearly appears that he was not qualified. *Richmond Locomotive Works* v. *Ford, supra; Lane Bros.* v. *Bauserman,* 103 Va. 146, 48 S. E. 857, 106 Am. St. Rep. 872. We do not perceive that this discretion was abused in the present case.

It follows from what has been said that the judgment complained of must be reversed, the verdict of the jury set aside and a new trial granted, if the plaintiff be so advised, to be had not in conflict with the views expressed in this opinion.

*Reversed.*